**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 92-CA-00769-SCT**

*GREGORY MCBRIDE*

*v.*

*CHEVRON, U.S.A., A FOREIGN CORP.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/91 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CURTIS R. HUSSEY |
| | JOHN M. DEAKLE |
| | JOHN MICHAEL SIMS |
| | J. ROBERT SULLIVAN, SR. |
| ATTORNEY FOR APPELLEE: | ROBERT D. GHOLSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 3/28/96 |
| MOTION FOR REHEARING FILED: | 4/19/96 |
| MANDATE ISSUED: | 5/30/96 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. **INTRODUCTION**

¶1. At issue in this negligence case is the proper method of calculating damages when the plaintiff has settled with one, but not all, of the co-defendants. Gregory McBride appeals the October 31, 1991, jury verdict of the Jones County Circuit Court in which he was found seventy-five percent negligent and Chevron, U.S.A., Inc. was found twenty-five percent negligent in a drilling accident that occurred on Chevron's leased property near Heidelberg, Mississippi. Because Radco Fishing & Rental Tools, Inc. settled with McBride during trial, calculations after the jury verdict resulted in McBride receiving no money from Chevron. McBride raises the following issues on appeal:

**A. Whether the trial court conducted the proper calculations when applying Radco's settlement to the jury's verdict.**

**B. Whether the trial court erred in refusing to grant McBride's Motions To Alter Or Amend The Judgment For Additur, Or In the Alternative, For New Trial On The Damages Issue.**

**C. Whether the trial court erred in failing to allow McBride the opportunity to present rebuttal testimony.**

**D. Whether McBride was entitled to certain jury instructions regarding the liability of Chevron and directed verdicts.**

## II. <u>STATEMENT OF THE FACTS</u>

¶2. On July 24, 1987, Gregory McBride was working as a floorhand for V.A. Sauls, Inc. in the Reedy Creek Field, located in Jones County, Mississippi. Sauls had contracted with Chevron U.S.A., Inc. to perform a workover, which term refers to conducting repairs on an existing well.

¶3. In addition to McBride, the Sauls crew was comprised of three Herndons: Pete, Mike and Ricky, who were the toolpusher, driller and floorhand respectively. The function of a toolpusher is to supervise the entire rig team; a driller operates the rig; and a floorhand works the floor on a particular piece of equipment. McBride was supervised by Pete Herndon, the toolpusher for the crew. The ultimate decision on how the operation was conducted belonged to Chevron, specifically to Chevron company representative Merle Pellusch, who was the drilling supervisor. Chevron, however, asserts that the Sauls rig crew, specifically Pete as the supervisor, had the responsibility of operating the bowl and slips properly.

¶4. When McBride was working the equipment, the backup tongs did not hold, causing the pipe to turn rapidly in the hole. The bowl was not bolted or chained to the wellhead, causing the slip handles to strike McBride's right knee. The decision not to chain the bowls had been made by the Sauls work crew. It is common practice not to bolt or chain the bowl, and the injury could have still occurred even if the bowl had been bolted or chained. Johnny Windham, former Sauls employee who worked with McBride as a derrick hand, testified that he did not see McBride operate the tongs in an incorrect manner nor did he think McBride was standing too close to the equipment. Mike Herndon, by contrast, testified that McBride was standing too close to the slips, and that he probably should have been the one to tell McBride to back up from the tongs.

¶5. McBride had only been working for Sauls for about three months. While McBride had worked with backup tongs, he testified he had never performed the type of job which gave rise to the accident. There was testimony at trial as to whether McBride had been trained to preform this type of job, with Chevron claiming that he had been. Apparently, at the time of the accident, no representatives from Radco or Chevron were present. Pellusch claimed it was not his responsibility to be on the premises at all times, and Radco, in its supplemental answer, stated that the slips and bowl were common rental equipment which did not require them to furnish an operator.

¶6. McBride underwent two knee operations which left four scars, and he is currently twenty-five percent permanently partially disabled in the right knee. McBride had previously undergone surgeries on his left knee and collarbone from football accidents, from which he completely recovered. McBride also submitted medical reports indicating that he suffers from depression. McBride collected workers' compensation

benefits from Saul's carrier.

¶7. Dr. Donald Cook was accepted as an expert in the field of orthopedic medicine and testified that McBride suffered a severe injury, and that the first operation was unsuccessful, making additional surgery on his knee necessary. According to Dr. Cook, it is highly probable that McBride will suffer pain the remainder of his life. McBride is limited in the type of work he can do by both physical and mental impairments. He suffers an approximately thirty-five percent medical impairment to his lower right extremity and Dr. Randall Thomas, psychologist, testified that McBride suffered from depression about his physical condition. McBride is currently taking antidepressant medication. Dr. Donald Woodall, vocational rehabilitation counselor, testified that McBride's vocational outlook was "bleak," and that there were no jobs in south Mississippi he could perform at the time of trial due to his impairments and educational deficits.

¶8. At trial, G. Richard Thompson, an economist, calculated the lifetime earnings of McBride discounted to present value to be $321,770. Thompson also testified that McBride will incur over $242,316 in physical therapy costs in his lifetime as a result of the knee injury. Joey Cooley, a physical therapist, testified that whether or not McBride would require supervised physical therapy would depend on his physician, but that he would probably always need to perform some form of therapeutic exercise.

### III. STATEMENT OF THE CASE

**¶9.** On April 6, 1990, Gregory McBride (McBride) filed a complaint against Radco Fishing & Rental Tools, Inc. (Radco) for alleged injuries he sustained while using their equipment at a wellsite owned by Chevron U.S.A., Inc (Chevron). After initial discovery, McBride amended his complaint to include Chevron as an indispensable defendant. The trial court allowed Bituminous Insurance Companies to intervene in the suit as the workers' compensation carrier.

¶10. Chevron filed a motion for summary judgment, asserting that the workers' compensation statutes pre-empted any recovery against it. This motion was denied, and the trial commenced on October 12, 1991. About midway through the trial, McBride settled with Radco. The jury was instructed by the court that henceforward all evidence presented in the trial should be considered only as it related to Chevron and any potential liability which Chevron might have to McBride, but the jury was not given any details of the McBride-Radco settlement. After a five-day trial, the jury returned a verdict, finding that McBride had suffered $500,000 in damages, but that he was seventy-five percent at fault for his injuries, while Chevron was found to be twenty-five percent at fault for said injuries.

¶11. McBride made a motion for a new trial, basing the motion on what is now the first assignment of error, namely the issue of verdict reduction calculations. The trial judge denied the motion with the following comments:

> I have no authority -- you have not furnished me any authority or have not been able to find any authority on these points. I don't have the time to do research on a question like this. All of my research and writing I might try to formulate as the result of my research, I think it would still be something that the Supreme Court would say. . . . I will just let them decide what they need to do about it. . . .

. . . .

The instruction, I think is somewhat confusing, but as I remember, it was an instruction not objected to. The way the verdict turned out, I think it did leave room for some improvement in the future and maybe even in this case where the Court might need to make some adjustment. . . . I know this case is going to the Supreme Court and I think they are better equipped to handle this question that I am.

## IV. <u>ANALYSIS OF THE LAW</u>

### A. Whether the trial court conducted the proper calculations when applying Radco's settlement to the jury's verdict?

¶12. This assignment of error presents a question of first impression in this state. While trial courts have routinely performed calculations of jury awards for disbursement purposes, this Court has not specifically addressed the method to be followed when the calculations involve a settlement between a plaintiff and one or more, but not all, of the co-defendants. Unfortunately, our statutes on joint and several liability do not address damages calculations with regard to this situation. However, some guidance on the proper method for calculating the award can be gleaned from these statutes, case law and other states' jurisprudence.

¶13. First, McBride argues the pros and cons of what has been termed in various other states as the "fault-first" method versus the "settlement-first" method. These terms refer to the split which has formed among various courts with regard to deciding whether the percentage representing the plaintiff's share of the fault should be applied to the plaintiff's gross damages *before* or *after* subtracting the amount of the settlement in order to arrive at the plaintiff's net recovery from the nonsettling tortfeasor(s). *See:* Jeffrey F. Ghent, J.D., *Comparative Fault: Calculation of Net Recovery by Applying Percentage of Plaintiff's Fault Before or After Subtracting Amount of Settlement by Less Than All Joint Tortfeasors,* 71 A.L.R.4th 1108, 1109 (1989). The following calculations illustrate the substantial difference between these two approaches as applied to the facts of the present case:

**Fault-First Method**

$500,000 (damages awarded by the jury)

-375,000 (McBride's 75% percent negligence)

= $125,000

-150,000 (Radco settlement)

= 0 (Chevron liability)

**Settlement-First Method**

$500,000 (damages awarded by jury)

-150,000 (Radco settlement)

=350,000

-262,500 (McBride's 75% negligence)

=87,500 (Chevron liability)

¶14. McBride argues that the settlement-first method is superior to the fault-first method given that it promotes settlement, more accurately reflects apportionment of liability among the responsible parties, and reflects the verdict where, as here, the jury was not aware of the amount of the settlement.

¶15. Chevron, on the other hand, views the settlement-first approach as an opportunity for McBride to collect more than he was entitled to by the jury. Chevron notes that under the settlement-first approach, McBride would collect $87,500 from Chevron, reflecting their twenty-five percent negligence, in addition to the previously settled for amount with Radco of $150,000, for a grand total of $237,500 in damages. Chevron argues that McBride would, in effect, be receiving a double recovery because, absent consideration of the Radco settlement, the most McBride could recover would be twenty-five percent of $500,000, which would entitle him to $125,000. Chevron claims that if it were forced to pay under a settlement-first method, then McBride would receive $112,500 more in damages than it is entitled to. The flaw in Chevron's analysis, however, is that the jury was never allowed to consider the fault of Radco when determining fault between the parties, pursuant to the instructions of the trial judge, who instructed the jury as follows:

> The Court instructs the jury that should your verdict be for the plaintiff in arriving at the damages, if any, to be assessed against the defendant, Chevron USA, you are hereby instructed that you are to fix the entire amount which you believe that the plaintiff has suffered. *You are not to take into consideration any settlement with any other party. The Court will make any necessary adjustments necessitated by the settlement with Radco.*

¶16. Recent decisions from other state courts have reached differing conclusions on whether the plaintiff's share of fault should be deducted from his gross damages before or after subtracting the amount of the settlement. Cases in which states have adopted a fault-first method in damages computation include: ***Lemos v. Eichel,*** 83 Cal.App.3d 110, 147 Cal.Rptr. 603 (5th Dist. 1978), ***American Pharmaseal v. TEC Systems,*** 162 Ill.App.3d 351, 113 Ill. Dec. 623, 515 N.E.2d 432, app.den. 119 Ill. Dec. 381, 522 N.E.2d 1240 (1987), ***Mulinix v. Saydel Consolidated School Dist.,*** 376 N.W.2d 109 (Iowa App. 1985), ***Schiles v.Schaefer,*** 710 S.W.2d 254, (Mo. App. 1986), ***Peterson v. Multnomah County School Dist.,*** 64 Or.App. 81, 688 P.2d 385 (1983).

¶17. ***Lemos v. Eichel,*** 83 Cal.App.3d 110, 147 Cal.Rptr. 603 (5th Dist. 1978) and ***American Pharmaseal v. TEC Systems,*** 162 Ill.App.3d 351, 113 Ill.Dec. 623, 515 N.E.2d 432 (2d Dist. 1987), both cases where the states chose the fault-first method, can be distinguished in that the juries in these cases were told to consider the comparative liability between all tortfeasors, including settling defendants. In the present case, by contrast, the jury was instructed to allocate relative degrees of fault only between McBride and Chevron. This is a highly important distinction, given that the jury could well have found that Radco shared a substantial degree of fault with the other parties, had they been instructed to so consider Radco's conduct.

¶18. Cases in which states have adopted the settlement-first method of damages computation are: ***Rittenhouse v. Erhart,*** 424 Mich. 166, 380 N.W.2d 440 (1985); ***Jenson v. ARA Services, Inc.,*** 736 S.W.2d 374 (Mo. 1987) (refusing to follow ***Schiles v. Schaefer,*** 710 S.W.2d 254 (Mo. 1987), an earlier decision selecting the fault-first method); ***Pollicina v. Misericordia Hospital Medical Center,*** 187

A.D.2d 217, 593 N.Y.S.2d 512 (1993); and *Shelby v. Action Scaffolding, Inc.,* 171 Ariz. 1, 827 P.2d 462 (1992).

¶19. In a medical malpractice and wrongful death action in New York, the plaintiff appealed from a resettled judgment following a jury verdict in his favor, which reduced the net damages owed by the nonsettling defendant to zero. *Pollicina v. Misericordia Hospital Medical Center,* 187 A.D.2d 217, 593 N.Y.S.2d 512 (1993). The trial court viewed the multiple defendants' settlements as set-offs from the remaining defendant hospital. *Pollicina,* 187 A.D.2d at 217, 593 N.Y.S.2d at 512. The appellate court modified the judgment, stating, *inter alia,* that a result virtually exonerating a nonsettling defendant is unfair and goes against the grain of encouraging settlements. *Id.* Since the New York state statute, like ours, did not address in what particular order verdict reduction should be accomplished, the appellate court determined that "[it] should be carried out in a manner that will advance rather than defeat the statute's goal."*Id.* at 513. The New York appellate division also followed this same approach in a decision one year earlier, when it modified a decision in which three out of four defendants settled during trial, and the remaining defendant was held responsible for only $10,000 of a $2.6 million verdict, despite being apportioned thirty-five percent of the fault. *Williams v. Niske,* 181 A.D.2d 307, 586 N.Y.S.2d 942 (1992). The appellate court said that the "jury verdict should have been reduced first by pretrial settlements, and then this could be rendered by [the] combined shared [sic.]of fault assessed against the defendants who settled during trial, with [a] result that the nonsettling defendant was liable for $595,000." *Niske,* 181 A.D.2d 307, 586 N.Y.S.2d 942.

¶20. In Arizona, the state supreme court granted review to a court of appeals decision that construed its Uniform Contribution Among Tortfeasors Act (UCATA). *Shelby v. Action Scaffolding, Inc.,* 171 Ariz. 1, 827 P.2d 462 (1992). In *Shelby,* the jury found Shelby liable for seventy percent of his injuries and Action liable for thirty percent of his injuries. *Shelby,* 171 Ariz. at 2, 827 P.2d at 463. Neither party requested the jury to allocate a degree of fault to the settling defendant employer. *Id.* The trial court in *Shelby* conducted damage calculations exactly as the trial court in the case *sub judice Id.* at 3; 464. That is, Shelby's 70% degree of fault was subtracted first from the total judgment and then the settlement amount was deducted, resulting in Action being held responsible for no damages. *Id.* To initially reduce the settlement from the judgment and then apportion fault between the parties would have resulted in Action being responsible for $120,000. *Id.*

*¶21.* The Arizona Supreme Court made a decision that the settlement-first method better reflected fairness and allowed the plaintiff, who negotiated a favorable settlement, to receive the benefit of that settlement instead of the nonsettling defendant. The court noted that under a fault-first approach, the nonsettling tortfeasor can escape liability entirely. *Shelby,* 171 Ariz. at 5; 827 P.2d at 466.

¶22. Likewise, under the fault-first method, Chevron would escape the twenty-five percent liability that the jury intended for it to incur. The settlement-first method provides the fairer method by which Chevron incurs liability for what the jury believed was its level of culpability. However, the settlement-first method is not without its flaws. As Chevron points out, McBride would be receiving more than he would normally be entitled to under comparative negligence principles if settlement-first calculations were determined to be the appropriate method. In essence, the settlement-first approach encourages a plaintiff to settle with one or some, but not all, of the defendants because he may get more damages than the jury allocates if he proceeds to trial with all defendants. *Shelby,* 171 Ariz. at 6; 827 P.2d at 467. On the other hand, the fault-first approach encourages a defendant not to settle, which goes against public policy, because liability may

be avoided entirely if the plaintiff receives all the jury determines he is entitled to in settlement. In ***Shelby,*** the Arizona Supreme Court viewed settlement-first to be the lesser of the two evils. ***Id.***

***¶23.*** In its brief, Chevron argues that there is a presumption that the jury follows the instruction of the court and that this Court would somehow be second-guessing the jury to change any part of the verdict. Chevron addresses the verdict reduction issue by stating that McBride is really complaining about Jury Instruction D-13A which states:

> If you find from a preponderance of the evidence that the Plaintiff and the Defendant were negligent in the incident involved in this accident [sic] as defined in the other instructions given by the Court and that the negligence of the Plaintiff and the Defendant was a proximate contributing cause of the accident in this cause, then you shall proceed as follows:

> (1) Determine the total damages, if any, the Plaintiff sustained as a direct proximate result of the accident, then

> (2) Determine the percentage or degree of negligence of the respective parties (combined percentages must equal 100%).

> When you have completed Steps 1 and 2 above, complete one of the following forms of the verdict and return same into the Court (writing your verdict on a separate piece of paper).

> If you find for the Plaintiff as against the Defendant, Chevron U.S.A., Inc.:

> "We the Jury, find the Plaintiff negligent by _____% and the Defendant, Chevron U.S.A., Inc. negligent by _____%; we find the total damages suffered by the Plaintiff to be _____."

¶24. Chevron's contention mis-characterizes eleven pages of McBride's brief, and the thrust of his argument to this Court. As Chevron acknowledges, McBride's only dispute with the instruction at trial was the peremptory nature of the language regarding his own contributory negligence. However, Chevron argues that since McBride did not object to the instruction on the grounds that it failed to take into account the negligence of Radco or the settlement with it, then he should be barred from presenting it as error on appeal. This argument is not well taken. The jury instruction was of great debate to the trial court, but McBride does not mention the instruction in his first assignment of error which encompasses the whole settlement-first versus fault-first analysis. He simply asks this Court to consider this issue which has remained unsettled in our jurisprudence: once a jury apportions fault and determines damages, what method of calculation is the trial judge compelled to follow when there has been a settlement with one or more, but not all, of the co-defendants?

¶25. Finally, Chevron argues that this Court has answered the aforementioned question in ***Whittley v. City of Meridian,*** 530 So. 2d 1341 (Miss. 1988). ***Whittley,*** however, does not squarely address the issue of when settlements are to be deducted from total damages. ***Whittley,*** 530 So. 2d at 1346. The only argument gleaned from ***Whittley,*** albeit stretched, is that this Court would conduct fault-first analysis given that we rejected the first of two recognized methods used to determine damages due a plaintiff where co-defendants are involved and one co-defendant has settled with the plaintiff. ***Id.*** The ***Whittley*** Court rejected the first of the two methods where the jury was instructed that a settlement had been made and the amount of that settlement, and then was told that the plaintiff's recovery would be reduced by the amount of the settlement (i.e., settlement-first). ***Id.*** However, the Court's entire analysis centered around the

impropriety of telling the jury the amount of the settlement for fear that it would influence their verdict. ***Id.*** Hence, the Court's decision was made, not because of a rejection of settlement-first or a conscious choice for fault-first analysis, but out of finding it would be reasonable for the jury to be informed that there was a settlement with a co-defendant. Absent the judge's so informing the jury, this Court noted, the jury would wonder why it was no longer present. ***Id.***

¶26. Our law favors settlement for many reasons, not the least of which includes the expeditious closure of cases. Miss. Code Ann. § 85-5-1 states the following:

> In all cases of joint or joint and several indebtedness, the creditor may settle or compromise with and release any one or more of such debtors; and the settlement or release shall not affect the right or remedy of the creditor against the other debtors for the amount remaining due and unpaid, and shall not operate to release any of the others of the said debtors; and all mortgages or securities for the said indebtedness shall remain in full force against the debtors not released, in favor of the creditor, and also in favor of such debtors as may be entitled to contribution, payment, or reimbursement from others of said debtors, and the right of payment, contribution or reimbursement, as among themselves, shall not be affected by this section; and if any debtor, so released, shall have paid more than his ratable share of the whole debt, the whole amount paid by him shall be credited, and if less than his ratable share, then the full amount of his ratable share shall be credited, and the other debtors shall be liable for the residue.

Miss. Code Ann. § 85-5-1(Revised 1991).

¶27. Obviously, our legislature wanted to encourage plaintiffs to pursue their claims, while at the same time creating an atmosphere ripe for settlement. When a nonsettling defendant, such as Chevron, believes it paid more than the jury's apportioned fault, then it can seek contribution from settling defendants such as Radco pursuant to § 85-5-1. Chevron argues in favor of a fault-first method in part because it knows that the likelihood of recovering contribution under the statute is slight, given that Radco has paid McBride more than Chevron would have under the settlement-first method. In order for Chevron to recover under this statute, Radco's liability would have to be more than the $150,000 it paid, and a jury would have to determine Radco's percentage of fault.

¶28. Dicta from our case law indicates that this Court would be receptive to a settlement-first approach pursuant to which Chevron would pay $87,500 upon remand:

> There was a day when parties had to be quite careful how they settled with less than all of the defendants in a pending action. It was once thought necessary that the plaintiff not even think, much less use, the words "settlement" or "release" in such an event. If he wished to settle he would take a writing labeled "a covenant not to sue," and we sanctioned such legal legerdemain. We are well past the days of such foolishness" [citations omitted].

> There are all sorts of rational reasons why our law should allow a plaintiff to settle with less than all of the multiple defendants and proceed against the remaining defendant or defendants. Public policy favors settlement, and a partial settlement is better than none at all. Such a settlement simplifies the issues remaining at trial. It reduces expense and conserves valuable judicial resources.

***

It offends no policy of this state to allow a plaintiff to snatch the bird in hand, then pursue the one in the bush as well.

*W.J. Runyon & Sons, Inc. v. Davis,* 605 So. 2d 38, 43 (Miss. 1992).

¶29. *Runyon* was later criticized by this Court for its characterization of the independent contractor relationship, but not for its comments regarding settlements. *See Richardson v. APAC-Mississippi, Inc.,* 631 So. 2d 143, 152 (Miss. 1994).

¶30. The rising number of cases involving multiple defendants necessitates this Court to choose a method of verdict reduction, given the lack of statutory mandates. It is an unavoidable fact that both the fault-first and settlement-first methods are imperfect, and each method results in either the plaintiff (pursuant to the settlement-first method) or the non-settling defendant (pursuant to the fault-first method) receiving a windfall. It thus falls to this Court to decide which party should bear the burden of the imperfections of each method and which party should enjoy the benefits thereof. It is the view of this Court that a defendant whose negligence has been found to have proximately caused injury to another person should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial. Accordingly, this Court adopts the settlement-first method, given that said method, despite its imperfections, yields the fairer results of the two methods.

¶31. This opinion is limited, however, to cases in which, as here, the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under comparative negligence principles. In such cases, a clear majority of courts nationwide which have considered this issue have agreed that the settlement-first method is the superior method for arriving at a fair judgment. The judgment of the trial court is reversed and remanded for an entry of judgment consistent with the opinion herein.

### B. Whether the trial court erred in refusing to grant McBride's motions to alter or amend the judgment for additur, or in the alternative, for new trial on the damages issue.

¶32. In determining whether or not a trial judge committed reversible error in denying a motion for a new trial, this Court inquires as to whether the trial judge abused his discretion in so doing. *American Fire Protection, Inc. v. Lewis*, 653 So.2d 1387, 1390 (Miss. 1995). This same abuse of discretion standard applies to this Court's review of a trial judge's denial of a motion for additur. *Harvey v. Wall*, 649 So.2d 184, 186 (Miss. 1995). Relevant to the review of a denial of a motion for additur is this Court's authority to impose such additur by statute, which is granted to this Court by Mississippi Code Annotated § 11-1-55 (Revised 1991).

¶33. In order to remand this case for an additur on damages, this Court must find that the jury was biased or prejudiced or that the verdict was against the overwhelming weight of the evidence. *Rodgers v. Pascagoula Public School Dist.*, 611 So.2d 942, 944. There is nothing in the record to indicate that the jury had any such bias or prejudice. With regard to the verdict itself, the jury's finding that McBride was seventy-five percent negligent for his own injury was supported by testimony that he was perhaps standing too close to the operation. In addition, given the proof of injuries and permanent impairment, the jury's finding that McBride had suffered $ 500,000 in damages can not be said to be against the "overwhelming weight of the evidence" by any standard. Accordingly, this second assignment of error is not well taken and

is rejected.

### C. Whether the trial court erred in failing to allow McBride the opportunity to present rebuttal testimony.

¶**34.** At trial, McBride attempted to present the testimony of Ricky Herndon, one of his co-workers, to rebut the testimony of Mike Herndon that McBride had been standing too close to the operation. Ricky Herndon would presumably have testified, as he did in his deposition, that McBride was not standing too close to the operation. Chevron objected, noting that McBride had known of this testimony prior to trial and could have presented this testimony during his case-in-chief. The trial judge agreed with Chevron and did not allow this testimony, expressing concerns about the length of the trial.

¶35. An abuse of discretion standard applies to this Court's review of the trial judge's decision not to allow rebuttal testimony. *Gilmore v. McGill, Inc.*, 491 So.2d 863, 866 (Miss. 1986). McBride asks this Court to remand for the presentation of testimony of which he had knowledge prior to trial and could have presented in his case-in-chief. McBride also had knowledge prior to trial of the deposition of Mike Herndon, in which Mike stated that McBride had been standing too close to the operation, and as such, McBride should have had knowledge of the likelihood that this issue would arise at trial. It can not be said that the trial judge abused his discretion in not allowing this rebuttal testimony, and this assignment of error is therefore rejected.

### D. Whether McBride was entitled to certain jury instructions regarding the liability of Chevron.

¶36. McBride asserts that the trial court erred in failing to grant jury instructions P-1, P-9, P-10, and P-15. All four of these jury instructions were peremptory in nature. Under the appropriate standard of review, this Court will consider:

> the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered so point overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of their impartial judgment might have reached different conclusions, affirmance is required.

*Sperry-New Holland v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993) [citing *Munford Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992).

¶37. Where there is conflicting evidence, the jury should be instructed in a manner which allows them to make the decision whether negligence occurred. After reviewing the instructions in question, this Court finds that the jury was properly instructed as to the issues in question. Accordingly, this assignment is without merit.

## V. <u>CONCLUSION</u>

¶38. McBride makes a compelling argument to this Court regarding verdict reductions between the plaintiff and non-settling tortfeasors. Persuasive authority from other states indicates that the settlement-first method,

whereby the settlement is first deducted and then apportionment occurs, is the approach which renders a fairer result. This opinion is limited, however, to cases in which, as here, the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under comparative negligence principles. This Court adopts such method, and therefore, remands the case for a reassessment of the damages calculation. All other assignments are without merit.

**¶39. AFFIRMED IN PART; REVERSED AND REMANDED FOR ASSESSMENT OF DAMAGES CALCULATION.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**