Robert **KRIESER**, etc., Plaintiff,

v.

**BAPTIST MEMORIAL HOSPITAL—
NORTH MISSISSIPPI,**
Defendant.

No. 3:92CV48–S–D.

United States District Court,
N.D. Mississippi,
Western Division.

Dec. 16, 1997.

John H. Cocke, Merkel & Cocke, Clarksdale, MS, for Plaintiff Robert Krieser.

Shelby Duke Goza, Hickman, Sumners, Goza & Gore, Clarksdale, MS, for Defendant Hobbs.

John H. Dunbar, Thomas T. Dunbar, Holcomb Dunbar, Oxford, MS, for Defendant Baptist.

## OPINION

SENTER, Chief Judge.

This cause involved the alleged wrongful death of Cynthia Renee Krieser, who died after experiencing an aortic dissection. Plaintiff's father sued Dr. A.H. Rogness, the emergency room doctor, Dr. Milton D. Hobbs, the treating internist, and Baptist Memorial Hospital—North Mississippi (BMH–NM), where decedent was initially treated, for negligence in diagnosing, treating, and caring for decedent. The case proceeded to trial, and on the third day, Dr. Rogness settled the claims against him for $650,000.00. The jury was informed of the settlement but not of the amount. The case was eventually submitted to the jury which was instructed not to speculate about the amount of the settlement or to take it into consideration in any way with regard to the remaining defendants. The court allowed the jury, however, to apportion fault among all defendants, including Dr. Rogness. At the close of deliberations, the jury returned a verdict of $200,000.00, finding that Dr. Rogness and BMH–NM were equally at fault for Cynthia's death, and that Dr. Hobbs was in no way responsible. Judgment was entered in accordance with those verdicts. Presently before the court are the post-trial motions of Krieser and BMH–NM. The court begins with the latter motion first.

■ In its motion to alter or amend judgment, BMH–NM asks the court to credit it with the $650,000.00 settlement proceeds paid by Dr. Rogness, which would result in a take nothing judgment against the hospital. Alternatively, BMH–NM requests that the court amend the judgment to reflect more clearly its responsibility for no more than $100,000.00, the interest attributable to that amount only, and one-half of plaintiff's costs in obtaining judgment against it.

The only authority cited by BMH–NM for the proposition that it is entitled to credit for the settlement is *Hunnicutt v. Wright*, 986 F.2d 119 (5th Cir.1993), which holds that under Mississippi law "where a party settles with one defendant, any remaining defendant receives credit for the settlement received from the released defendant." *Hunnicutt*, 986 F.2d at 124–25. This is indeed a correct statement of the law in Mississippi in the context of a case in which the settling defendant settles for less than the verdict rendered against the remaining defendant. Here, the court is not confronted with that situation. Instead, this court must determine whether the non-settling defendant is entitled to benefit from a settlement with another defendant which actually exceeded the jury verdict. Although the court can find no direct state or federal authority to control its decision, it looks to *McBride v. Chevron U.S.A.*, 673 So.2d 372 (Miss.1996), for guidance.

In *McBride*, the plaintiff settled with defendant Radco midway through trial for the sum of $150,000.00. The case proceeded against defendant Chevron, and the jury was instructed "that henceforth all evidence presented in the trial should be considered only as it related to Chevron and any potential liability which Chevron might have to [plaintiff] ...." *McBride*, 673 So.2d at 375. The

jury was not given any details about the Radco settlement and was not permitted to apportion liability with Radco in mind. The jury returned a verdict for $500,000.00 but found that plaintiff was 75 per cent at fault for his injuries while Chevron was 25 per cent at fault. *Id.* The initial question before the Mississippi Supreme Court was whether the court should apply a "fault-first" or a "settlement-first" method of calculating damages when the plaintiff has settled with less than all defendants.[1]

The Mississippi Supreme Court did not question the long-standing rule noted in *Hunnicutt.* Rather, in a case of first impression, the court adopted the settlement-first approach, rejecting Chevron's argument that to calculate damages in that manner would result in the plaintiff's recovery of more than he was entitled to under the jury's verdict. After examining cases from other states which had found that "a result virtually exonerating a nonsettling defendant is unfair," *id.* at 377, and that "the settlement-first method better reflected fairness and allowed the plaintiff ... to receive the benefit of that settlement instead of the nonsettling defendant," *id.* at 378, the court found that the "settlement-first method provides the fairer method by which Chevron incurs liability for what the jury believed was its level of culpability." *Id.* The court stated:

> It is an unavoidable fact that both the fault-first and settlement-first methods are imperfect, and each method results in either the plaintiff (pursuant to the settlement-first method) or the non-settling defendant (pursuant to the fault-first method) receiving a windfall. It thus falls to this Court to decide which party should bear the burden of the imperfections of each method and which party should enjoy the benefits thereof. It is the view of this Court that *a defendant whose negli-*

> *gence has been found to have proximately caused injury to another person should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial.* Accordingly, this Court adopts the settlement-first method, given that said method, despite its imperfections, yields the fairer result of the two methods.

*Id.* at 380 (emphasis added).

It is this highlighted language and the *McBride* court's reasoning which most persuade this court that it should not allow BMH–NM to receive credit for the settlement between plaintiff and Dr. Rogness.[2] If BMH–NM were credited with the settlement, it would pay nothing for its part in proximately causing the death of Cynthia Krieser. This would clearly undermine the intention of the jury that BMH–NM be held accountable and would, in this court's opinion, violate public policy.

 With regard to the alternative request of BMH–NM that the court amend the judgment and plaintiff's for new trial and to alter or amend judgment with regard to post-judgment interest, the court is of the opinion that the requests are well taken at least in part. Dr. Rogness was dismissed from this action via an agreed order of dismissal with prejudice. Although he was included in the special interrogatories submitted to the jury for purposes of determining plaintiff's damages and apportioning fault among the defendants, Dr. Rogness should not be mentioned in the judgment at all. Indeed, plaintiff agrees with the hospital in that regard.

 In considering plaintiff's motion for new trial on the issue of damages, the court finds that the motion is not well taken. Cynthia Krieser was a remarkable young woman

---

1. As explained by the *McBride* court:

 These terms refer to the split which has formed among various courts with regard to deciding whether the percentage representing the plaintiff's share of the fault should be applied to the plaintiff's gross damages *before* or *after* subtracting the amount of the settlement in order to arrive at the plaintiff's net recovery from the non-settling tortfeasor(s).

 *McBride,* 673 So.2d at 376.

2. The court notes the limitation of the *McBride* holding "to cases in which ... the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under comparative negligence principles." *McBride,* 673 So.2d at 380. At the time of trial, however, it was unclear what course this court should take in that regard, and as the court recalls, no party objected to the course chosen.

and scholar who was dearly loved by her family and acquaintances and possessed the attributes necessary for a successful career. However, the court does not believe that the jury's verdict "was so inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *Taylor v. Green*, 868 F.2d 162, 164 (5th Cir.1989). Cynthia was a freshman in college with no dependents who already lived a considerable distance from her family. It was within the jury's province to reject the testimony of plaintiff's expert economist as to Cynthia's future earnings and to consider the testimony of medical experts on both sides that even if the aortic dissection had been properly and immediately treated, Cynthia's life expectancy would have been less than the average female. Although it is impossible to quantify the amount of pain and suffering Cynthia endured before her death and the loss that her family has experienced, the court is of the opinion that the amount awarded is not so grossly inadequate as to require a new trial on damages. The judgment will be amended, however, to show (1) that BMH–NM is responsible for $100,000.00 of the total verdict, which clearly reflects the hospital's portion of what the jury believed were plaintiff's total damages, and (2) that post-judgment interest should run on that amount from the date of the verdict, not the entry of judgment.[3] Costs shall be assessed against BMH–NM as no other defendant in existence at the time of judgment was found liable, and the court has been provided with no authority to act otherwise.

In conclusion, the court finds that Baptist Memorial Hospital—North Mississippi is not entitled to credit for plaintiff's settlement with Dr. Rogness, and that plaintiff is not entitled to a new trial on damages. However, an amended judgment shall be issued to more clearly reflect the verdict as it relates to the hospital and to the calculation of post-judgment interest.

---

3. The jury returned the verdict in this case on March 8, 1995. Per the court's instructions, the clerk did not enter judgment until July 3, 1995. Under usual circumstances, post-judgment interest runs from the date of entry of judgment, *see* 28 U.S.C. § 1961(a); however, in this case, interest shall be calculated from the date of the jury's verdict as plaintiff was in no way responsible for the court's delay in entering judgment. *See Louisiana & Arkansas Railway v. Pratt*, 142 F.2d 847 (5th Cir.1944).