785 So.2d 290 (2000)
Tina PETERSON, Appellant,
v.
Bernard LADNER, Sr., Appellee.
No. 1998-CA-01672-COA.
Court of Appeals of Mississippi.
November 7, 2000.
*292 Donald C. Dornan Jr., Biloxi, Attorney for Appellant.
Joe Sam Owen, Robert P. Myers Jr., Gulfport, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.

MODIFIED OPINION ON MOTION FOR REHEARING
SOUTHWICK, P.J., for the Court:
¶ 1. The motion for rehearing is granted in part and this opinion is substituted for the initial opinion of the Court. This appeal concerns a personal injury suit involving apportionment of fault among a settling co-defendant and non-settling co-defendant. After a jury awarded damages to the plaintiff, the non-settling co-defendant appealed. She argues that the trial court erred in refusing to allow the jury to consider the negligence of the settling co-defendant in apportioning fault and applying pro-tanto credit to offset damages. Additionally, she argues error in admitting a medical opinion not disclosed in discovery and in refusing to grant remittitur or in the alternative a new trial on damages. We affirm the determination of a total amount of damages, but reverse and remand for a new trial on the issue of apportionment of liability.

STATEMENT OF FACTS
¶ 2. On June 5, 1996, Bernard Ladner, Sr., (Ladner) went for a ride with his friend Gregory Ladner (Gregory), on Gregory's animal drawn wagon. Around 8:30 p.m. that evening, Tina Peterson left her parent's house to return to her home. On the way home, Peterson did not see the animal drawn wagon in the road in time to stop her vehicle. Her car collided with the rear of Gregory's wagon causing Ladner to be thrown from the wagon and injured.
¶ 3. Ladner was taken to the hospital and diagnosed with a fractured collar bone, fractured left foot and compress fractured thoracic vertebrae. Although his collar bone and foot have healed, the compressed fracture to the vertebrae has failed to heal. Due to this, the doctor has placed several permanent restrictions on Ladner's mobility. These restrictions include the inability to stand or to sit for more than one hour at a time. Along with these and other restrictions, Dr. Jackson has not released Ladner to return to his previous employment.
¶ 4. Ladner filed suit against Gregory and Peterson alleging their negligence as the cause of his injuries. Prior to trial Gregory and Ladner settled for $100,000 thereby removing Gregory from the case. The trial proceeded against Peterson where the court refused to instruct the court to allocate fault between Ladner, Gregory and Peterson as to the degree of negligence contributing to Ladner's injuries.
¶ 5. The jury, eleven to one, returned a verdict in favor of Ladner in the amount of $540,000. Additionally, the jury apportioned 40% fault to Ladner and 60% fault to Peterson. The award was reduced by the settlement between Ladner and Gregory resulting in $440,000 to be apportioned between Ladner and Peterson. A net judgment of $264,000 was entered in favor of Ladner after all of the offsets and reductions. Peterson appealed.

DISCUSSION

1. Allocation of fault.
¶ 6. Peterson argues that the trial court erred in refusing to instruct the jury *293 to consider the negligence of Gregory, a settling co-defendant, in apportioning fault for Ladner's injuries as a result of the accident. The trial court relied upon a 1996 case that held that the jury should not be informed as to any settlement reached between other possible parties. McBride v. Chevron, USA 673 So.2d 372 (Miss.1996). However, the cause of action in McBride arose prior to the passage of the statute providing for apportionment of fault among joint tort-feasors. Miss.Code Ann. § 85-5-7 (1999).
¶ 7. This statute states "[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault." Id. In a recent case, which we note was released after the trial of this suit, the court has interpreted this section to mean that any tortfeasor even absent ones, that contributed to the injury must be considered by the jury when apportioning fault. Estate of Hunter v. General Motors Corp., 729 So.2d 1264 (Miss.1999). Accordingly, it would appear that any negligence by Gregory must be considered in apportioning fault.
¶ 8. However, Ladner argues that this Court has recognized constructive apportionment. Accu-Fab & Construction Co., Inc. v. Ladner, No. 96-CA-00692-COA, ___ So.2d ___, 2000 WL 274291 (Miss.Ct. App. March 14, 2000), cert. granted June 22, 2000. In Accu-Fab, the Court held that an employer covered by the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 901, cannot be considered for apportionment of fault. Id. at ¶ 11. The Court reasoned that the plaintiff as an employee was the alter-ego of the employer, and the only recovery available was through workers' compensation. Id. Therefore, the plaintiff did not have the option of suing under a negligence theory and should be not penalized for that inability. Id. Since the Supreme Court has granted a writ of certiorari in Accu-Fab, the ultimate outcome is uncertain.
¶ 9. Even if Accu-Fab were a final decision, the ruling has no application here. The rules controlling a suit in which one potential tortfeasor has settled with the plaintiff were resolved by the Supreme Court in Estate of Hunter, though unfortunately for the trial judge here that clarity came after his rulings. Regardless of the uncertainty surrounding whether someone exempt from tort liability can nonetheless have fault allocated to him, it is clear that a nonexempt contributor to an injury must have fault allocated if that is requested by a party to litigation. Ladner could have joined both Gregory and Peterson, and absent a settlement, both might have had the existence and amount of liability imposed at trial. As it was reversible error to refuse to instruct the jury to apportion liability among Ladner, Gregory and Peterson for Ladner's injuries, we reverse and remand for a new trial on the issue of apportionment of fault.
¶ 10. Because of our reversal on the allocation of fault, we do not reach the issue of the method to credit the settlement. Among the possible outcomes for a jury at a new trial is to allocate no fault to the settling alleged tortfeasor, or to declare fault in a percentage that makes what that tortfeasor paid in settlement either more or less than his allocated share. To try to address all the potential outcomes would give this opinion multiple layers of advice, but add nothing to its holding. We decline to proceed down that road.

2. Propriety of affirming on damages despite reversing on allocation of fault
¶ 11. In our previous opinion, we went no further than to answer the question just *294 considered. On rehearing, Ladner argues that we should also consider the validity of the damage calculation since in his view, it should be affirmed absent any error at the first trial regarding it. It is accepted appellate practice to affirm liability when that was appropriately resolved at the first trial and remand solely for a new consideration of damages. Here we are reversing for a new trial on relative liability, and we are being asked to preserve the damages that were awarded.
¶ 12. Does an appellate court have the right to affirm damages and reverse and remand for a new trial on liability only? The appellate rule that a jury verdict was "indivisible" and either had to be affirmed or reversed in its entirety was abandoned in 1915. Yazoo & M.V.R. Co. v. Scott, 108 Miss. 871, 67 So. 491 (1915). That case and many since have affirmed liability and remanded for a new trial on the issue of damages. In Yazoo, though, the reasoning was broader than the facts. The court held that if the error only affects one issue of the case, but other issues are without error, there should be a remand for a new trial only as to those issues with errors. Id. at 494. Granting a new trial on certain issues should be done only when fair to both parties and the issues can clearly be separated. Id. at 498. Many cases say that damages and liability are severable issues. Since liability can be severed from damages and affirmed, initially it would appear that damages can be severed from liabilityor at the very least allocation of faultand affirmed.
¶ 13. No Mississippi case law has been discovered that explicitly accepts or rejects affirming a jury award of damages while requiring a new trial only as to liability. Many other states permit affirmance of damages and remanding for a trial only on liability. Anno., Grant of New Trial on Issue of Liability Alone, Without Retrial Issue of Damages, 34 A.L.R.2d 988-996 (1954). The conclusion of the annotator is that the approach is "only a specific application of the procedure ... [that] when manifest justice demands it and it is clear that the course can be pursued without confusion, inconvenience, or prejudice to the rights of any party, a new trial may be limited to a particular severable question." Id., § 2 at 990. There are 26 jurisdictions cited as following the rule. Id. & Later Case Service. No mention is made of any who have categorically rejected the concept. Colorado's intermediate appellate court quite recently affirmed a lower court's award of damages while reversing on the issue of liability. Rodriguez v. Healthone, 24 P.3d 9 (Colo.Ct.App.2000).
¶ 14. In our case dealing with a wagon driver and his passenger, together with the driver of an automobile, the jury was not allowed to consider the negligence of the wagon driver because he had entered a settlement. At a new trial, even though fault may be allocated to the wagon driver, no new financial liability can be imposed on him because of the settlement. The allocation of fault to all three people will be meaningful only to the two people who participated in the trial that led to the first jury's verdict on damages. If the award of damages was without reversible error, then the only reason not to affirm on damages is if, as the Yazoo court held, the issues are not severable.
¶ 15. We can envision that in some cases the issues would not be severable. One example is if a new party independent of the others is being joined on remand, then any damages already awarded would not be binding on him. To arrive at one common declaration of damages, the issues would need to be addressed again for all parties. Here, though, no new parties will be liable for the damages. Different evidence *295 may be introduced on who did what to whom in the accident, since fault against the wagon driver is being allocated. Conceivably each separate jury who examines even identical evidence will come to somewhat if not radically different conclusions. Yet that is true whether error infected the original proceedings or not. We do not reverse what does not need to be reversed just because a somewhat different outcome may result at a new trial. An appellate court reverses error and anything infected by that error. We do not find that the allocation of fault just to two people instead of three affected the determination of damages by the first jury.
¶ 16. We close this issue with a logical consideration. There is some initial conceptual difficulty in accepting that damages can be affirmed even though liability/allocation of fault is being reversed. That may be because liability analytically is the first issue. Until it is decided, there is no reason to determine damages. An appellate court might consider rolling back the verdict to the point in time of the error. But that statement is just words strung together. The two conceptsdamages and liability for the damagescan be independent. There is no logical reason why in some cases the instructions could not require the jury first find if the plaintiff had any damages, and if so, how much. Only if damages are found would the jury then be obligated to decide who was liable. We are not suggesting that this be done in future cases but we are only analyzing as did the Supreme Court in Yazoo whether the damages issue is severable from the liability one.
¶ 17. Here, adding consideration of a new potential contributor to the injury does not affect the severity of the injury. We therefore need to consider the issues not addressed in our initial opinion that question the validity of the damage award.

3. Discovery violation
¶ 18. Peterson argues that Ladner violated the discovery rules concerning expert witnesses. She contends that the court was in error allowing the testimony of Dr. Jackson concerning a physical impairment rating. The rating was not disclosed in the discovery response that designated expert witnesses. During the doctor's deposition, the rating was first brought out and defense counsel objected. This deposition with the rating was later read into the record at trial.
¶ 19. When requested, parties must disclose the opinions of expert witnesses and the underlying grounds of the opinions. Miss R. Civ. P. 26(b)(4)(A)(i). It was revealed on the Ladner's designation of expert witnesses that Dr. Jackson was expected to testify that Ladner was totally unable to return to his previous occupation and to discuss the injuries, treatment and causal relationship with the accident. During Dr. Jackson's deposition, he also testified that Ladner had an impairment level rating of 11-14% as a result of the accident. The question is whether Peterson was unfairly surprised or prejudiced from this specific opinion not disclosed in discovery.
¶ 20. The initial consideration is that discovery responses regarding experts do not, indeed cannot include everything that an expert witness will state at trial. The answer does not have to be a statement essentially as long as the testimony. The Rule requires that a party "state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions which the expert is expected to testify and a summary of the grounds for each opinion." M.R.C.P. 26b (4)(A)(i). Did Ladner put Peterson on fair notice of the disputed testimony?
*296 ¶ 21. In one similar case cited by Peterson, testimony of a treating physician as to plaintiff's disability was excluded. Winston v. Cannon, 430 So.2d 413, 415 (Miss. 1983). The treating physician in discovery stated that the plaintiff sustained no permanent injuries. Id. However, during trial, the doctor testified to a 10-20% disability rating. Id. The surprise and unfairness were clearthe summary in the discovery response was that no permanent injury resulted and the inconsistent testimony was to a specific permanent disability. In our case, the discovery response regarding Dr. Jackson said just the opposite of what was said in Winston. Dr. Jackson was reported in discovery to have concluded that Ladner had permanent injuries. When he then testified in a deposition, he gave a specific measure of those injuries.
¶ 22. Another case on which Peterson relies held that expert testimony regarding extent of injury should have been excluded when the discovery indicated that the subject matter for the expert was solely as to causation. T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 950 (Miss.1992). The trial court had permitted the expert to proceed beyond the stated subject matter, causing reversal on appeal.
¶ 23. For the reasons already stated, neither precedent assists Peterson here. What does control the outcome is the purpose for these discovery rules. They are safeguards to prevent trial by ambush. Illinois Central Railroad Company v. Gandy, 750 So.2d 527, 532 (Miss.1999). In that case the Court distinguished its situation from T.K. Stanley, reasoning that the answers to the interrogatories adequately placed the party on notice as to the subject matter of an expert witness's opinion. Id. We determine whether fair notice was supplied here.
¶ 24. In Ladner's designation of expert list, he identified Dr. Jackson as an expert witness that would testify as to Ladner's injuries, treatment and causation. Dr. Jackson was also expected to testify that Ladner had a total disability from his previous employment. As such, Peterson should not have been unfairly surprised when the doctor stated a specific level of impairment. We hold that the court did not err in admitting the impairment level as defense counsel was adequately on notice as to the subject matter of the doctor's opinion.

4. Damages.
¶ 25. Next, Peterson argues that the trial court erred in not granting remittitur or in the alternative a new trial on the issue of damages. The amount of a jury verdict will be affirmed unless it is the result of "bias, prejudice or passion on the part of the jury" or that is beyond all "measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Public Sch. Dist., 611 So.2d 942, 945 (Miss. 1992). Additionally, the standard of review for damages is whether a reasonable hypothetical juror could have made such a determination as to the amount of damages. South Central Bell v. Parker, 491 So.2d 212, 215 (Miss.1986).
¶ 26. At trial, an economist testified as to the plaintiff's lost earnings by calculating the present value of Ladner's earnings at the time of the injury to retirement. As of the date of the accident, Mr. Ladner earned $37,000 per year. Additionally, Mr. Ladner had been out of work for the two years prior to trial. The lost take home pay totaled $72,410 for the two years.
¶ 27. The vocational rehabilitation specialist testified that because of the permanent mobility restrictions placed on Mr. Ladner, he could probably find a job earning a little over minimum wage. Considering *297 this, Mr. Ladner would lose $12.73 per hour in pay. The economist calculated this loss during Ladner's working lifetime as $929,025 that at present value would be $449,187. By adding the two years in lost wages to the future earnings, Mr. Ladner, according to the economist, would suffer past and future lost earnings in the amount of $521,597.
¶ 28. Peterson emphasizes evidence that Ladner could return to his previous employment at Ingall's Shipbuilding as a production planner. Ingall's is located 75 miles from Ladner's home in Kiln, Mississippi. There was some disputed evidence from a vocational expert regarding a thirty-mile driving restriction. Dr. Jackson placed a one hour sitting or standing permanent restriction upon Ladner. The jury could have considered both of these items of evidence in deciding that this employment was not a reasonable option.
¶ 29. As to similar employment opportunities available to Ladner within the driving restriction, there was conflicting testimony from both parties' vocational experts. Considering the evidence presented, we conclude that a reasonable juror could determine that the damages suffered by Ladner totaled $540,000.00.
¶ 30. We have reversed the allocation of fault made by the first jury, but any new allocation on remand will be made to this total damage amount.
¶ 31. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED AS TO THE DETERMINATION OF TOTAL DAMAGES IN THE AMOUNT OF $540,000, AND REVERSED AND REMANDED AS TO THE ALLOCATION OF FAULT. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE PARTIES.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.
MYERS AND THOMAS, JJ., NOT PARTICIPATING.