**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
_____

**No. 98-60016**
_____

**ROBERT KRIESER, as heir and wrongful death beneficiary of**
**Cynthia Renee Krieser (Deceased),**

**Plaintiff-Appellee,**

**versus**

**MILTON D. HOBBS; et al.,**

**Defendants,**

**BAPTIST MEMORIAL HOSPITAL, NORTH MISSISSIPPI,**

**Defendant-Appellant.**

_____

**Appeals from the United States District Court**
**for the Northern District of Mississippi**
_____

January 28, 1999

Before WISDOM, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

Concerning the wrongful death of the daughter of Robert Krieser, the jury in this Mississippi diversity action having found Baptist Memorial Hospital–North Mississippi and a doctor in its emergency room (the doctor had settled and been dismissed early in the trial) at fault, and having apportioned the total $200,000 in damages equally between the doctor and the hospital, chiefly at issue in Baptist Memorial's appeal is whether plaintiff's earlier $650,000 settlement with that defendant doctor should reduce Baptist Memorial's liability for the $100,000 in damages

apportioned to it by the jury.  We **AFFIRM**, agreeing with the district court that, under Mississippi's statute for apportionment of tortfeasor damages, MISS. CODE ANN. § 85-5-7, where fault has been apportioned between settling and non-settling defendants, then, notwithstanding the settlement, the non-settling defendant remains liable for the amount of damages allocated to him in direct proportion to his percentage of fault.

Also at issue is the date from which postjudgment interest should run.  Concluding, on this record, that it should run from the July 1995 entry of the original judgment, we **REFORM** the amended judgment in that respect.

I.

In early 1990, Cynthia Renee Krieser, a college student, became extremely ill and was taken to the emergency room at Baptist Memorial.  She was treated in the emergency room by Dr. Rogness.

After several hours of observation, Ms. Krieser was placed under the care of Dr. Hobbs in another part of the hospital.  After diagnostic tests revealed an aortic dissection, Ms. Krieser was flown to a hospital in Memphis, Tennessee, for treatment.

Ms. Krieser's condition had become irreparable.  She died nine days later.

In 1992, Robert Krieser, the father of Ms. Krieser, filed this diversity action against Baptist Memorial (claiming negligence by its emergency medical technicians, emergency room nurses, and floor

nurses), and Drs. Rogness and Hobbs (claiming negligence in diagnosis and treatment).  The case was tried in early 1995.

On the third day of the eight-day trial, Krieser settled with Dr. Rogness for $650,000.  Dr. Rogness was dismissed from the action that day.

As part of the jury instructions, the jury was informed about the settlement with Dr. Rogness, but not its size, and was instructed that the settlement should not affect its deliberations.

Pursuant to special interrogatories, the jury was to determine whether Dr. Rogness, Dr. Hobbs and/or Baptist Memorial were at fault; that is, had any been negligent, and if so, did such negligence proximately contribute to Ms. Krieser's death.  For any defendant found at fault, the jury was to determine the percentage of the total damages attributable to that fault, after having first assessed the total damages.

On 8 March 1995, the jury assessed no fault as to Dr. Hobbs (the second treating physician at Baptist Memorial).  It found fault as to Dr. Rogness (who had settled) and Baptist Memorial; assessed total damages at $200,000; and apportioned 50% of the damages to the fault of Dr. Rogness and 50% to the fault of Baptist Memorial.

The judgment, prepared pursuant to FED R. CIV. P. 58 by the district court clerk, was dated 8 March 1995, the same day as the verdict.  But, that judgment provided erroneously that Dr. Rogness (who, as noted, had been dismissed during trial as a result of his

3

settlement) was liable for $100,000 in damages, as was Baptist Memorial. Pursuant to the district judge's instructions, the judgment was not entered until 3 July 1995. *Krieser v. Baptist Memorial Hospital-North Mississippi*, 984 F.Supp. 463, 466 & n.3 (N.D. Miss 1997).

Post-trial, Baptist Memorial moved to credit Dr. Rogness' $650,000 settlement against its $100,000 liability, and to remove the error in the judgment regarding the liability of Dr. Rogness; Krieser moved for a new trial on damages based on their inadequacy, and for postjudgment interest from the date of the verdict, rather than the delayed entry of judgment. The district court delayed ruling on these motions until December 1997.

Baptist Memorial's motion for a credit as to the settlement and Krieser's motion for a new trial on damages were denied. An amended judgment, entered on 16 December 1997, removed the reference to Dr. Rogness and provided for postjudgment interest from the date of the verdict, 8 March 1995.

## II.

Baptist Memorial contends that the $650,000 settlement should be credited against the $100,000 for which it is liable; and that postjudgment interest should run only from the entry of the *amended* judgment.

4

A.

In support of the claimed settlement credit, Baptist Memorial urges that Mississippi's "one-recovery" or "one-satisfaction" rule bars a plaintiff from recovering more than the total awarded damages. Krieser counters that Mississippi's 1989 tort reform statute, MISS. CODE ANN. § 85-5-7, pursuant to which the damages were apportioned, undermines the application of the one-recovery rule.

It goes without saying that, for a diversity action, we apply state substantive law, *e.g.,* ***Gasperini v. Center for Humanities, Inc.***, 518 U.S. 415, 427 (1996); and that we review *de novo* the district court's conclusions of law, such as the effect to be given a settlement under Mississippi law, *e.g.*, ***Bertram v. Freeport McMoran, Inc.*** 35 F.3d 1008, 1019 (5th Cir. 1994). But, because the Mississippi Supreme Court has not addressed the impact of § 85-5-7 on a settlement's effect on a later judgment, we must make an "***Erie*** guess" how that court would decide the issue, as per ***Erie R. Co. v. Tompkins***, 304 U.S. 64 (1938). *E.g.,* ***H.E. Butt Grocery Co. v. National Union Fire Ins. Co.***, 150 F.3d 526, 530 (5th Cir. 1998); ***Farm Credit Bank of Texas v. Guidry***, 110 F.3d 1147, 1149 (5th Cir. 1997).

Moreover, under different tort liability schemes, a settlement with one tortfeasor affects a judgment against non-settling defendants in different ways. *See generally* ***McDermott, Inc. v. AmClyde***, 511 U.S. 202, 208-21 (1994) (summarizing approaches in the

5

context of a decision on admiralty law). The two broad alternatives are (1) *pro-tanto* ("to the same extent") reduction, under which a settlement reduces the judgment against remaining defendants dollar for dollar; and (2) proportionate share reduction, under which a settlement reduces the judgment in proportion to the settling tortfeasor's fault. *Id*. at 208-09. A *pro-tanto* regime may or may not allow a contribution action by a non-settling defendant against a settling defendant who paid an inadequate share. *Id.*

Various other schemes are possible as well. For example, New York uses whichever method is greater, *see* N.Y.G.O.L. § 15-108; while in Texas, a defendant may elect between a *pro-tanto* rule and a complicated schedule, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.012, 33.014. It is also possible to reduce a judgment in proportion to the *number* of settling tortfeasors, rather than by their fault; such a scheme is often called "*pro rata*" reduction, though it is more informatively termed "*per capita*". *See **McDermott,*** 511 U.S. at 210 & n.9; ***Dobson v. Camden***, 705 F.2d 759, 762 (5th Cir. 1983).

The choice among methods represents a policy choice for the State of Mississippi. The only legislation touching directly upon the effect of a settlement, MISS. CODE ANN. § 85-5-1, applies to settlements in cases of "joint or joint and several indebtedness". While some courts refer to this section in discussing tortfeasors more generally, rather than debtors *per se*, *e.g., **Smith v. Falke***,

6

474 So. 2d 1044, 1045 (Miss. 1985), this much is clear: "joint or joint and several indebtedness" does *not* include the "several only" liability contemplated in § 85-5-7, Mississippi's earlier-cited tort reform statute. And, as explained below, § 85-5-7 applies to the question at hand.

Beyond the legislature, of course, Mississippi courts have long assumed a gap-filling role in specifying the effects of settlements. Almost a century ago, the traditional *pro-tanto* rule was stated in ***Bailey v. Delta Electric Light, Power, & Mfg. Co.***, 38 So. 354, 355 (Miss. 1905):

> It is a universally established principle of law that joint tort feasors are both jointly and severally liable, and may be proceeded against either singly or jointly, individually, or all combined. It is also well settled that, where a party has once received full satisfaction and compensation for an injury inflicted, no matter from which one of several tort feasors, all are thereby released.
>
> ...
>
> ... [A non-settling defendant] would have the right to claim, should its liability be established, ... to have credited the amount received by the [plaintiff] from the [settling tortfeasor] upon the amount of damages which the [plaintiff] may have sustained.

***Bailey***'s logic flows from the premise with which it begins: *joint-and-several* liability. The rule under joint-and-several liability – and its rootedness in such regimes of liability – are illustrated well by ***Medley v. Webb***, 288 So. 2d 846 (Miss. 1974).

7

There, after a verdict, the plaintiff settled with one defendant, who paid all but $2.00 of the judgment, while apparently agreeing that the plaintiff could seek recovery in another action against the other tortfeasor:

> The issue here is whether or not a judgment against one of the joint tort-feasors for *all the damages* found to be due the plaintiff by the jury is fully satisfied when the amount of the judgment is paid, although the party paying the judgment agrees that the plaintiff may sue another joint tort-feasor.
>
> ...
>
> ... The plaintiff has the right to sue either one of the joint tort-feasors for all the damages accruing to the plaintiff, *inasmuch as a joint tort-feasor is liable for all the damages due to the plaintiff*. If the plaintiff elects to sue one joint tort-feasor for *all the damages* alleged to be due to him, and the jury determines the amount of damages due to the plaintiff as a result of the accident, the amount due then becomes fixed.

288 So. 2d at 848-49 (emphasis added).

When there is more than one tortfeasor, *pro-tanto* reduction of a verdict, when there has been a settlement, is a response to the phenomenon of the defendants' intersecting obligations. In other words, a plaintiff is entitled to recover from one, or the other, or a mixture between them. In its desire to ensure, to the extent it can, that a plaintiff be compensated, the joint-and-several regime affords a plaintiff overlapping remedies. These overlapping remedies, however, must *not* become multiple remedies, and so *pro-tanto* reduction is applied.

8

Mississippi has joined many other States in modifying joint-and-several liability; it did so in 1989. 1989 Miss. Laws ch. 311, MISS. CODE ANN. § 85-5-7; *see* Kathleen M. O'Connor and Gregory P. Sreenan, *Apportionment of Damages: Evolution of a Fault-Based System of Liability for Negligence*, 61 J. AIR LAW & COMM. 365, 374-81 (1996)(documenting trend). Indeed, what **Bailey** understood in 1905 to be a "universally established principle" is fast becoming a minority view. Almost 40 States have now limited joint-and-several liability in some way. *See **Fernanders v. Marks Const. of South Carolina, Inc.***, 499 S.E.2d 509, 512 & n.9 (S.C.App. 1998) (listing 37 statutes).

Section 85-5-7 provides, with several exceptions (tortfeasors acting in concert, employers and employees, and when necessary in order for the plaintiff to recover at least 50% of his total assessed damages), for tort liability that is *several, rather than joint-and-several*. Therefore, generally, a defendant is liable for damages only in proportion to *his* own percentage of fault. The statute reads in full:

> (1) As used in this section "fault" means an act or omission of a person which is a proximate cause of injury or death to another person or persons, damages to property, tangible or intangible, or economic injury, including but not limited to negligence, malpractice, strict liability, absolute liability or failure to warn. "Fault" shall not include any tort which results from an act or omission committed with a specific wrongful intent.

9

(2)  Except as may be otherwise provided in subsection (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be joint and several only to the extent necessary for the person suffering injury, death or loss to recover fifty percent (50%) of his recoverable damages.

(3)  Except as otherwise provided in subsections (2) and (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault.  In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.

(4)  Any defendant held jointly liable under this section shall have a right of contribution against fellow joint tort-feasors.  A defendant shall be held responsible for contribution to other joint tort-feasors only for the percentage of fault assessed to such defendant.

(5)  Nothing in this section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly noted herein.

(6)  Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it.  Any person held jointly and severally liable under this section shall have a right of contribution from his fellow defendants acting in concert.

10

(7) In actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault.

(8) Nothing in this section shall be construed to create a cause of action. Nothing in this section shall be construed, in any way, to alter the immunity of any person.

MISS. CODE ANN. § 85-5-7.

As our court noted recently, Mississippi courts have not had much occasion to apply the statute. *See Whitehead v. Food Max of Mississippi, Inc.*, ___ F.3d ___, 1998 WL 876903, *15-*16 (5th Cir. 1998) (listing references to the section). None of these referenced cases concerns the effect of a settlement on non-settlors' liability for damages. Very recently, however, the Mississippi Supreme Court held that allocation of fault under the section to a settling tortfeasor is proper, construing "party" in § 85-5-7(7) (allowing a factfinder's allocation of fault among "parties") to "refer[] to any participant to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial". *In re Estate of Hunter v. General Motors Corp.*, 1999 WL 12908, *14 (Miss. 1999). The court explicitly reserved judgment on whether the *pro-tanto* rule survived the enactment of § 85-5-7. *See id.*, *22 & n.8.

This statute was the basis for the apportionment in district court. In its brief on appeal, Baptist Memorial did not contest the jury being permitted to find fault as to the settling/dismissed

11

defendant, and to apportion damages to him.[1]  On appeal, however, there is some controversy regarding the nature of the liability. We note parenthetically, although it only concerns how the parties have phrased their positions, that § 85-5-7 distinguishes "joint tortfeasors" from those tortfeasors subject to "joint liability". As noted, § 85-5-7(3) provides that a "joint tortfeasor" is ordinarily *not* subject to joint liability.  Baptist Memorial is not a "several tortfeasor", as Krieser terms it; it is a *joint* tortfeasor subject only to *several* liability.

In that Krieser's complaint claimed that Baptist Memorial and Dr. Rogness (who settled during trial) were jointly and severally liable, Baptist Memorial insists that Krieser may not take an inconsistent position on appeal.  However, the claim in the complaint was based, at least in part, on inadequate development of the facts.  The complaint alleged that Baptist Memorial employed Dr. Rogness; this was denied by both.  In discovery, Baptist Memorial claimed that Dr. Rogness was an independent contractor. This was apparently accepted by Krieser; the pretrial order does not list Dr. Rogness' employment among the issues for trial. Consistent with this, the jury was permitted to apportion separate fault to the doctor and to the hospital.  Had they instead been an

---

[1]As noted *supra*, the Mississippi Supreme Court in **Estate of Hunter** very recently approved apportionment of fault to settling tortfeasors.

employer and employee, the jury would have considered them as one defendant and assessed only one percentage of fault, pursuant to the second sentence of § 85-5-7(3) ("In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.").

Additionally, we note that, in district court, Baptist Memorial urged application of the apportionment statute. While Baptist Memorial does not explicitly contend that it faces joint-and-several liability, such a position would be far more blatantly in conflict with its own contentions in district court than is Krieser's here, given the need for factual development at the time of his complaint. In any event, it is clear that Baptist Memorial's liability is, as § 85-5-7 plainly requires, several only, and *not* joint-and-several.

The parties conceded at oral argument on appeal that there were *no* decisions on point by Mississippi's Supreme Court. That appears to still be the case. While Mississippi courts have addressed the effect of partial settlements three times in recent years, *none* of these cases has applied § 85-5-7. *See **Turner v. Pickens***, 711 So. 2d 891 (Miss. 1998) (after remand, a plaintiff's acceptance from one defendant of a remittitur releases all defendants); ***Robles By and Through Robles v. Gollott and Sons***

13

*Transfer and Storage, Inc.*, 697 So. 2d 383 (Miss. 1997) (informing a jury of a prior lawsuit and settlement is not error)***;  McBride v. Chevron  U.S.A.***, 673  So.  2d  372  (Miss.  1996) (plaintiff's comparative negligence applied to damages *after* subtracting settlement, not before).

Because **Turner** and **McBride** involved injuries sustained before § 85-5-7's effective date, 1 July 1989, the section did not apply. *See* **Turner**, 711 So. 2d at 892 (injury in 1985); **McBride**, 673 So. 2d at 374 (injury in 1987); 1989 Miss. Laws ch. 311 § 7 (section "shall apply only to causes of action accruing on or after July 1, 1989").  And, as noted *supra*, **McBride** specifically limited its holding "to cases in which, as here, the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under *comparative negligence principles*".  673 So. 2d at 381 (emphasis added).

Although the injury in **Robles** took place in August 1989, after the effective date of § 85-5-7, **Robles** quotes language from pre- § 85-5-7 **Whittley v. City of Meridian**, 530 So. 2d 1341, 1346 (Miss. 1988), stating that a jury should be told of a settlement's existence but not its amount, and "the trial judge would reduce the amount awarded by the jury by the amount of the settlement by the other defendant or defendants".  However, no apportionment of fault took place at the trial court in **Robles,** because the jury found no

14

liability.  *Whittley* was quoted at length, *see* 697 So. 2d at 384-85, but only to explain the traditional rule that juries are to be informed of settlements.

Finally, our comment on Mississippi law in **Hunnicutt v. Wright**, 986 F.2d 119, 125 (5th Cir. 1993), that, "where a party settles with one defendant, any remaining defendant receives credit for the settlement received from the released defendant", likewise considered only pre- § 85-5-7 law.  While the fact was not stated in the opinion, the injury in **Hunnicutt** took place in 1988, prior to § 85-5-7's effective date.

As discussed above, Mississippi's rule of *pro-tanto* reduction is premised and rooted in joint-and-several liability.  Moreover, § 85-5-7 *itself* operates to reduce the total damages in proportion to the fault of a *settling tortfeasor/defendant*, just as it reduces the total damages in proportion to the fault of *any* other tortfeasor/defendant.  The statute therefore establishes the chief alternative to *pro-tanto* reduction, to which Baptist Memorial does not object.  In effect, by seeking a *pro-tanto* reduction, *as well as* application of the apportionment statute, Baptist Memorial advocates, not a pure *pro-tanto* reduction of damages for previous settlements, but a rule reducing its liability for damages *twice*: first, by the settling defendant's share of fault; and second, by the amount of that settlement, if greater.

15

Set-offs for settlement and the "one-satisfaction" rule exist to prevent the plaintiff from recovering twice from the same assessment of liability. But, where liability is not joint-and-several, and each defendant instead bears liability for damages *only proportionate* to his own fault, there *is no* assessment of liability for damages common to the settling and non-settling defendants. Accordingly, the settlement has an entirely separate basis from the apportioned damages, and the one-recovery rule does not apply. The "one satisfaction" rule applies to situations like the one in **Turner**, in which liability from two parties is rooted in a single source (there, the remittitur). Where, as here, liability or payment is separately rooted, the rule is inapposite.

We think it is clear that the Mississippi Supreme Court, if faced with this question, would follow the large number of other courts who have understood legislative limitation of joint-and-several liability to render incompatible a *pro-tanto* credit for non-settling tortfeasors. Courts in at least 16 other States—Arizona, California, Colorado, Florida, Indiana, Iowa, Kansas, Kentucky, New Jersey, New Mexico, Pennsylvania, Tennessee, Texas, Washington, West Virginia, and Wyoming—have so overridden or limited *pro-tanto* regimes, many of which had had statutory standing.

We find persuasive these cases' number and, most especially, their reasoning. For example, **Gemstar Ltd. v. Ernst & Young**, 917

16

P.2d 222, 237 (Ariz. 1996) (citations and internal quotations

omitted) held in pertinent part:

> [R]educing plaintiffs' award by the amount of
> the [previous] settlement would undermine the
> policy justifications underlying several only
> liability.  Under several only liability, the
> defendant is liable only for the amount of the
> plaintiff's damages that is proportional to
> the defendant's percentage of fault. [Arizona
> Revised Statutes] § 12-2506(A).  Thus,
> offsetting a plaintiff's damages by the amount
> of a non-party's settlement is unnecessary
> because the defendant pays only his share of
> the damages.  A contrary rule would (1) give
> the benefit of an advantageous settlement to
> the non-settling tortfeasor, rather than to
> the plaintiff who negotiated the settlement,
> (2) discourage some defendants from settling
> in anticipation of acquiring the benefits of
> the settlements of their co-tortfeasors, and
> (3) neglect to recognize the fact that
> settlement dollars are not synonymous with
> damages but merely a contractual estimate of
> the settling tortfeasor's liability.

As another example, the pertinent holding in *Waite v. Morisette*,

843 P.2d 1121, 1124 (Wash.App.), amended, 851 P.2d 1241 (1993),

follows:

> Where proportionate liability applies, as
> here, a defendant can never be liable for more
> than his percentage share, because recovery is
> limited to his proportionate share of the
> total damages.  The reasons for allowing
> credits where the liability is joint and
> several are not present where liability is
> proportionate.

*See also Hoch v. Allied-Signal, Inc.*, 29 Cal.Rptr.2d 615, 621-

26 (Cal.App. 1994); *Smith v. Zufelt*, 880 P.2d 1178, 1183-88 (Colo.

1994); *Kussman v. City and County of Denver*, 706 P.2d 776, 777-82

17

(Colo. 1985) (later overridden by statute); *Wells v. Tallahassee Memorial Regional Medical Center, Inc.*, 659 So. 2d 249, 250-52 (Fla. 1995); *Barber v. Cox Communication, Inc.*, 629 N.E.2d 1253, 1258 (Ind.App. 1994); *Thomas v. Solberg*, 442 N.W.2d 73, 73-78 (Iowa 1989); *Glenn v. Fleming*, 732 P.2d 750, 755 (Kan. 1987) (and *cf.* *York v. InTrust Bank, N.A.*, 962 P.2d 405, 431-32 (Kan. 1998), reaffirming *pro-tanto* credit where joint-and-several liability remains); *D. D. Williamson & Co., Inc. v. Allied Chemical Corp.*, 569 S.W.2d 672, 673-74 (Ky. 1978); *Rogers v. Spady*, 371 A.2d 285, 287-88 (N.J.Super.A.D. 1977) (later overridden by statute); *Johnson v. American Homestead Mortg. Corp.*, 703 A.2d 984, 987-88 (N.J.Super.A.D. 1997)*; Wilson v. Galt*, 668 P.2d 1104, 1107-09 (N.M.App. 1983); *Charles v. Giant Eagle Markets*, 522 A.2d 1, 2-5 (Pa. 1987); *Varner v. Perryman,* 969 S.W.2d 410, 413-14 (Tenn. 1997); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 431 (Tex. 1984) (later overridden by statute); *Johnson by Johnson v. General Motors Corp.*, 438 S.E.2d 28, 33 (W.Va. 1993); *Haderlie v. Sondgeroth*, 866 P.2d 703, 708-712 (Wyo. 1993). Moreover, in construing § 85-5-7, the Mississippi Supreme Court recently followed the lead of courts from Florida and Tennessee in construing those states' modification of joint-and-several liability. See *Estate of Hunter*, 1999 WL 12908, *12 (citing *Fabre*

*v. Marin*, 623 So. 2d 1182 (Fla. 1993), and *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79 (Tenn. 1996)).

The only States we have found maintaining a *pro-tanto* credit to non-settling defendants where joint-and-several liability has been limited are Idaho and Maine. *Curtis v. Canyon Highway Dist. No. 4*, 831 P.2d 541, 545-47 (Idaho 1992), *overruled on other grounds*, *Lawton v. City of Pocatello*, 886 P.2d 330 (Idaho 1994); *Hoitt v. Hall*, 661 A.2d 669, 673 (Me. 1995); *Hewitt v. Bahmueller*, 584 A.2d 664, 666 (Me. 1991).

The case from Idaho, *Curtis*, held that legislative modification of joint-and-several liability did not impliedly repeal its tortfeasor release statute. However, *Curtis* confronted a specific statute mandating a *pro-tanto* credit, as well as a rule limiting implied repeal unless two statutes are "manifestly inconsistent with and repugnant to each other", 831 P.2d at 546. By an amendment that predated *Curtis*, but did not apply to it, the Idaho Legislature corrected this error, acknowledging the incompatibility of *pro-tanto* and several-only regimes:

> Under the present system, in multiple defendant cases, each defendant only pays its pro rata share of the total damages and, therefore, should not be entitled to any credit for the pro rata share paid by another defendant in settlement. The proposed amendments ... make the section consistent with the prior elimination of joint and several liability.

19

***Tuttle v. Wayment Farms, Inc.***, 952 P.2d 1241, 1244 (Idaho 1998) (quoting "[t]he statement of purpose for the 1991 amendment of [Idaho Code] § 6-805").

The cases from Maine, ***Hewitt*** and ***Hoitt***, appear to be the result of idiosyncratic drafting and an explicit statute mandating the *pro-tanto* rule; they have been subject to extensive criticism. *See* Arlyn H. Weeks, *The Unsettling Effect of Maine Law on Settlement in Cases Involving Multiple Tortfeasors*, 48 ME. L. REV. 77 (1996).

In sum, the majority rule is decidedly that a *pro-tanto*/one-satisfaction rule has *no* application to liability no longer both joint *and* several. *See* ***Wells***, 659 So. 2d at 25 ("clearly the majority rule").[2]

---

[2]   Indeed, regarding the *pro-tanto* approach, Baptist Memorial highlights 22 AM. JUR. 2d *Damages* § 559:

> The consideration received by one injured as a consequence of a tort committed by two or more tortfeasors operates to reduce, pro tanto (to the same extent), the amount of damages he is entitled to recover against any other tortfeasor responsible for his injuries.

However, § 561 in that same source advocates departure from that rule in the light of an apportionment statute:

> The rule that recovery from nonsettling tortfeasors is reduced pro tanto by the amount received in settlement from another tortfeasor may be affected by a comparative negligence statute that apportions negligence to each party, including each of the defendants. *If the statute provides that each tortfeasor is*

20

Baptist Memorial's characterization of Krieser having a "recovery of $750,000 on a $200,000 verdict" is a red herring. Obviously, Krieser will *not* recover $750,000 on the verdict (now judgment) itself; rather, he obtained $650,000 from the settlement *and* was awarded $100,000 by the verdict/judgment. Each amount flows from a distinct source and is footed on a distinct basis. It is not surprising that different dispute-resolution methods produce different, or "inconsistent", results; nor should we force a harmonization between them.

Krieser bore the risks both of an inadequate settlement with respect to Dr. Rogness and of an inadequate verdict with respect to Baptist Memorial. For example, assume that, after Krieser had settled for $650,000 with the doctor, the jury had returned a verdict for $1,000,000, but had apportioned 90%, instead of 50%, of the fault ($900,000) to the doctor and only 10% ($100,000) to the hospital. Krieser would have recovered only $750,000, instead of the $1,000,000 awarded by the jury. This is because, instead of the doctor being liable for $900,000 pursuant to the verdict, Krieser had accepted a settlement from him for $250,000 less. As another example, there appears to have been great uncertainty as to

_____

> *responsible for the percentage of negligence attributed to him, the judgment against each defendant is not reduced by the amount of a settlement paid by other tortfeasors.*

(Emphasis added.)

21

the probable damages arising out of this tragic death, due to the underlying physical problem, cause, or defect. In this regard, although facially $200,000 might seem inadequate in a wrongful death case, especially as to Ms. Krieser, the district court denied Krieser's motion for a new trial on damages. As a final example, Krieser settled early during trial, when, presumably, the result was far less certain. In sum, Krieser is entitled to the fruits of each method of dispute-resolution.

On this question of claimed overcompensation, we find quite persuasive the comments of the Texas Supreme Court in *Duncan*, 665 S.W.2d at 430-431:

> Plaintiffs bear the risk of poor settlements; logic and equity dictate that the benefit of good settlements should also be theirs.
>
> ...
>
> ... [A]ny enrichment of plaintiffs under the new system of comparative causation is not unjust, for the simple reason that no one is harmed. The settling defendant cannot complain, because he agreed to pay. The non-settling defendant has no right to complain, because he was not a party to and is not affected by the settlement.

*See also* *McDermott*, 511 U.S. at 219-20:

> Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss.

22

In holding, pursuant to our "*Erie*-guess", that, pursuant to §

85-5-7, the amount of damages apportioned to a non-settling

defendant is not reduced by a settlement by another defendant, we

find most persuasive, as did the district court, the following

language from the **McBride** decision by the Mississippi Supreme

Court, even though it concerned a case to which § 85-5-7 was not

applicable because the incident occurred before its effective date:

> The rising number of cases involving multiple
> defendants necessitates this Court to choose a
> method of verdict reduction, given the lack of
> statutory mandates.  It is an unavoidable fact
> that both the fault-first and settlement-first
> methods are imperfect, and each method results
> in either the plaintiff (pursuant to the
> settlement-first method) or the non-settling
> defendant (pursuant to the fault-first method)
> receiving a windfall.  *It thus falls to this
> Court to decide which party should bear the
> burden of the imperfections of each method and
> which party should enjoy the benefits thereof.
> It is the view of this Court that a defendant
> whose negligence has been found to have
> proximately caused injury to another person
> should not be allowed to escape liability for
> his negligence by the fortuity that a co-
> defendant has settled prior to trial.*
> Accordingly, this Court adopts the settlement-
> first method, given that said method, despite
> its imperfections, yields the fairer results
> of the two methods.

673 So. 2d at 380 (emphasis added).

B.

Concerning Baptist Memorial's claim that postjudgment interest

should not begin running until entry of the amended judgment, the

controlling federal statute provides:  "Interest shall be allowed

23

on any money judgment in a civil case recovered in a district court.... *Such interest shall be calculated from the date of the entry of the judgment*".  28 U.S.C. § 1961 (emphasis added).  Of course, § 1961 governs all postjudgment interest on money judgments in federal district court.  *E.g.,* **Mitchell Energy Corp. v. Samson Resources Co.**, 80 F.3d 976, 987 (5th Cir. 1996).

The jury reached its verdict on 8 March 1995.  That same day, pursuant to FED. R. CIV. P. 58, the district court clerk prepared the judgment, repeating the jury's finding and referring erroneously to liability by both Baptist Memorial *and* the settling/dismissed defendant, Dr. Rogness.  That judgment provided that Krieser recover $200,000 from both defendants, "with 50 percent attributable to each defendant".  This judgment was not entered, however, until 3 July 1995.

Then, after the district court considered the motions to credit the settlement, for a new trial on damages, to correct the wording of the judgment, and to have postjudgment interest run from the date of the verdict, an amended judgment, reflecting Baptist Memorial's $100,000 liability, was entered on 16 December 1997. And, as ordered by the district judge, the amended judgment provided for postjudgment interest from 8 March 1995, the *date* of the verdict (*and* of the original judgment, as so noted in the amended judgment).

24

In its December 1997 opinion on these motions, the court stated why the original judgment, although dated 8 March 1995, had not been entered until 3 July 1995, almost four months later. It stated that the delayed entry had been "[p]er the court's instructions"; and that, apparently concerning both the original and amended judgments, Krieser "was in no way responsible for the court's delay in entering judgment". 984 F.Supp. at 466 & n.3.

Baptist Memorial urges that postjudgment interest *not* run until the entry of the amended judgment on 16 December 1997, almost three years after trial was completed on 8 March 1995. As hereinafter explained, although we agree that the language of § 1961 permits such interest to run only from *entry* of judgment, the proper such entry was that of 3 July 1995, at which time Baptist Memorial's liability for $100,000 was fully ascertained.

In ordering postjudgment interest from the date of the verdict (which was also the date of the original judgment, 8 March 1995), although citing § 1961 and noting that "[u]nder usual circumstances, [such] interest runs from the date of entry of judgment", the district court reasoned understandably that Krieser should not be penalized for a delay which he did not cause, citing *Louisiana & Arkansas Railway Co. v. Pratt*, 142 F.2d 847, 849 (5th Cir. 1944). Moreover, FED. R. CIV. P. 58 requires that, upon a verdict, "the clerk, *unless the court otherwise orders*, shall forthwith prepare, sign, and *enter* the judgment without awaiting

25

any direction by the court". (Emphasis added.) (As noted, concerning the original judgment, it appears that Rule 58's "unless the court otherwise orders" exception came into play; the court instructed the clerk to delay entry of that judgment.) This statutory duty of the clerk, combined with the powerful intuition that a plaintiff should not be deprived of his judgment earning interest during a delay which he did not cause, lend considerable force to the district court's decision to make an exception to the rule under § 1961 and to instead allow postjudgment interest from the date of the verdict, 8 March 1995.

However, the decision to allow postjudgment interest from that date, which equates with the date of, *but not entry of*, the original judgment, parallels a position specifically repudiated in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990). *Kaiser Aluminum* rejected reliance on a "defendant's fault in causing the delay in entry of judgment" as a basis for computing postjudgment interest from an earlier date, 494 U.S. at 834 (quoting Note, *Interest on Judgments in the Federal Courts*, 64 YALE L.J. 1019, 1039 (1955)). We note as well that *Pratt* was featured prominently in the article describing the approach *Kaiser* rejected, *see* 64 YALE L.J. at 1033-37, and centrally guided *Turner v. Japan Lines, Ltd.*, 702 F.2d 752, 755-57 (9th Cir. 1983), which *Kaiser Aluminum* explicitly overruled, 494 U.S. at 834. Other than the district court here, *Pratt* has not been cited favorably by any

26

federal court since ***Kaiser Aluminum***.  *See also **Boyd v. Bulala***, 751 F.Supp. 576, 579 (W.D.Va. 1990) (stating that ***Kaiser Aluminum*** rejected ***Pratt***).

The four-month delay in entry of the original judgment was due to the district court's instructions.  And, the much greater 30-month delay in entry of the amended judgment was due, apparently, to that court hoping the Mississippi Supreme Court would render a decision on point on the settlement credit issue.  In any event, none of the delay can be attributed squarely either to the defendant, Baptist Memorial, or to Krieser.  Accordingly, it may well be that the district court's cite to ***Pratt*** was simply in reference to its language that the postjudgment interest was to run "from the date judgment *should have been entered* as required by ... Rule 58".  ***Pratt***, 142 F.2d at 849.  Notwithstanding the district court's good, admirable, and equitable intentions, ***Kaiser Aluminum*** dictates otherwise.  The statute is clear; postjudgment interest can run only from entry of judgment.

On the other hand, we disagree with Baptist Memorial's contention that the entry of the *amended* judgment is the relevant entry.  Needless to say, "[t]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the *ascertainment of the damage* and the payment by the defendant".  ***Kaiser Aluminum***, 494 U.S. at 835-36 (1990) (internal quotation marks and citation

27

omitted; emphasis added).  The ascertainment of damage is reflected in a judgment.  FED. R. CIV. P. 58.

Along this line, § 1961 is silent as to which judgment, if there are amendments, triggers the interest.  For this case, upon the entry of the original judgment, the damages were *fully ascertained*.  That amount did *not* change upon entry of the amended judgment.  The latter only deleted the reference to the settling/dismissed defendant.  Accordingly, the first entry of judgment, 3 July 1995, is the appropriate date from which such interest runs.  *Accord* **Greenway v. Buffalo Hilton Hotel**, 143 F.3d 47, 55 (2nd Cir. 1998).  We therefore **REFORM** the judgment in this respect.  *See* **United States for use of Wallace v. Flintco Inc.**, 143 F.3d 955, 973 (5th Cir. 1998).

### III.

For the foregoing reasons, that part of the judgment imposing liability for $100,000 against Baptist Memorial is **AFFIRMED**; that part regarding postjudgment interest is **REFORMED** to provide for such interest from 3 July 1995.

*AFFIRMED IN PART; REFORMED IN PART*

28