**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1999-CA-01099-SCT**

*NARKEETA TIMBER COMPANY, INC. AND LAVON McCALLUM*

*v.*

*VELMA JENKINS, PERSONAL REPRESENTATIVE OF THE ESTATE OF FLOYZELL HILL, JOHNNY MOSLEY AND FANNIE MOSLEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/1999 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | H. W. WILLIAMS, III |
| ATTORNEYS FOR APPELLEES: | BENNIE L. TURNER |
| | ORLANDO RODRIQUEZ RICHMOND, SR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED-11/30/2000 |
| MOTION FOR REHEARING FILED: | 1/9/2001; denied 2/22/2001 |
| MANDATE ISSUED: | 3/1/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Narkeeta Timber Co., Inc. and Lavon McCallum ask this Court to hold as a matter of first impression that under Mississippi's tortfeasor liability apportionment statute, Miss. Code Ann. § 85-5-7 (1999), the collective joint and several liability of all defendants contributing to a loss is fifty percent. In other words, Narkeeta and McCallum contend that the statute does not authorize a prevailing plaintiff to recover fifty percent of his award from each defendant. We agree with this reading of this statute and therefore reverse and render.

## FACTS AND PROCEEDINGS BELOW

¶2. On January 3, 1995, at approximately 6:30 p.m., Floyzell Hill was driving a 1988 Chevrolet truck southbound on U.S. Highway 45 in Noxubee County. Fannie Mosley and her son Johnny Mosley, two of the appellees herein, were passengers in Hill's truck. Lavon McCallum, while in the course and scope of his employment with Narkeeta Timber Company, Inc., was driving a tractor owned by Waters International Truck, pulling a loaded log pole trailer in the northbound lane on Highway 45. Approximately twenty-five miles south of the accident scene, McCallum discovered that an electrical shortage had caused his tail lights to fail so he drove with his hazard lights flashing en route to the Weyerhaeuser plant in Columbus. Theron Koehn, another defendant in this case, was stopped in his truck at the intersection of Old Macon Road and Highway 45 waiting to turn north onto Highway 45. Koehn testified that he observed the tractor trailer

driven by McCallum decreasing speed and flashing what he mistakenly concluded as a turn signal in an apparent attempt to turn off of Highway 45 and onto Old Macon Road. Under this erroneous assumption, Koehn turned his pickup truck from Old Macon Road onto Highway 45. Unfortunately, McCallum continued through the intersection and collided with the rear-end of Koehn's truck, the force of which propelled Koehn's truck into the southbound lane of Highway 45 and directly into Hill's truck. As a result of the collision, the Mosleys suffered multiple injuries, and Hill died several days later at a nearby hospital.

¶3. After the accident, three separate suits were filed, one for each of the occupants of Hill's truck. Velma Jenkins is the personal representative of the estate of Hill and an appellee herein. Koehn, Narkeeta, and McCallum were the defendants in each of the three cases below. Prior to trial, the cases were consolidated and tried to a verdict. The jury found in favor of each of the plaintiffs.

¶4. The jury awarded $1,500,000 to Hill's estate, $500,000 to Johnny Mosley, and $51,066 to Fannie Mosley. The total jury award in favor of the plaintiffs and against each of the defendants is $2,051,066. The jury responded to special interrogatories and determined that Koehn was eighty percent (80%) at fault and that Narkeeta, by virtue of its employee McCallum, was twenty percent (20%) at fault for the plaintiffs' injuries and damages. On September 17, 1997, the final judgments were entered and filed with the circuit court. The verdicts and the total monetary award remain undisturbed and are not at issue in this appeal. Motions for JNOV, or in the alternative, for a new trial and remittitur were denied. On January 30, 1998, Narkeeta filed a motion to authorize the circuit clerk to cancel judgments against McCallum and Narkeeta. After a hearing on the matter, the Noxubee County Circuit Court entered a memorandum opinion and order wherein it denied Narkeeta's and McCallum's motion to authorize the circuit clerk to cancel judgments against them.

¶5. On June 18, 1999, Narkeeta and McCallum filed their notice of appeal. The current issue involves payment of the judgment. Narkeeta and McCallum have paid $925,533 and now seek to have the judgment against them dismissed as satisfied, arguing that the payment by them, coupled with a $100,000 payment by Koehn, relieves them of any further obligation to the Mosleys and Jenkins pursuant to Miss. Code Ann. § 85-5-7. Specifically, Narkeeta and McCallum argue that:

> **THE CIRCUIT COURT ERRED AS A MATTER OF LAW BY REQUIRING McCALLUM AND NARKEETA TO PAY AN ADDITIONAL $ 100,000 OVER THE $ 925,533 ALREADY PAID SINCE THE RESULT WOULD BE TANTAMOUNT TO HOLDING THESE DEFENDANTS JOINTLY AND SEVERALLY LIABLE TO SUCH AN EXTENT AS TO ALLOW THE PLAINTIFFS TO RECOVER MORE THAN 50% OF THEIR RECOVERABLE DAMAGES UNDER MISS. CODE ANN. § 85-5-7 (2).**

## STANDARD OF REVIEW

¶6. We review questions of law de novo. ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 165 ¶ 7 (Miss. 1999). Therefore, we are not required to defer to the trial court's order that denied Narkeeta and McCallum's motion to cancel the judgment.

¶7. Both sides assert that this is an issue of first impression whereupon we are asked to interpret Miss. Code Ann. § 85-5-7. If the language of a statute is plain and unambiguous, then construction is superfluous and will not be allowed:

The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for construction, but where it is ambiguous the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished. Finally all presumptions and intendments must be indulged in favor of the validity of a statute, and its unconstitutionality must appear beyond a reasonable doubt before it will be declared invalid.

*Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980).

¶8. The statute at issue in this case is Miss. Code Ann. § 85-5-7, which states in pertinent part that:

. . . .

(2) [I]n any civil action based on fault, the liability for damages caused by two (2) or more persons shall be joint and several only to the extent necessary for the person suffering injury, death or loss to recover fifty percent (50%) of his recoverable damages.

(3) Except as otherwise provided in subsections (2) and (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault. In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.

(4) Any defendant held jointly liable under this section shall have a right of contribution against fellow joint tort-feasors. A defendant shall be held responsible for contribution to other joint tort-feasors only for the percentage of fault assessed to such defendant.

. . . .

### Evolution of Joint and Several Liability

¶9. Mississippi follows joint and several liability which is a method of determining loss apportionment between the plaintiff and multiple tortfeasors. In 1910, Mississippi adopted a pure comparative negligence standard, but in 1952, tortfeasors gained a limited right of contribution among themselves if all of the tortfeasors were named as defendants and none settled before a joint judgment was rendered. H. Wesley Williams, III, *1989 Tort "Reform" in Mississippi: Modification of Joint and Several Liability and the Adoption of Comparative Contribution*, 13 Miss. C.L. Rev. 133, 151 (1992). In order to cure the problem of lack of contribution between joint tortfeasors, Mississippi instituted a third-party practice under Mississippi Rule of Civil Procedure 14. However, the usefulness of Rule 14 was greatly diminished if a joint tortfeasor had no substantive right of contribution such as the derivative or secondary liability of the third-party defendant to the third-party plaintiff. Miss. R. Civ. P. 14 cmt. In summary, prior to 1989, plaintiffs had the option to sue one, all or a select group of tortfeasors and collect full damages from those parties sued. *Hall v. Hilbun*, 466 So.2d 856, 879 (Miss. 1985). Plaintiffs could recover the entire amount of the award from any single tortfeasor, no matter the allocation of fault. *Id.*

¶10. On July 1, 1989, the Legislature enacted Miss. Code Ann. § 85-5-7 (1999) wherein it modified the previous rule of law with regard to the amount of damages for which a tortfeasor could be held responsible. Under the old system, we had joint and several liability up to 100% of the judgment. Contrary to the statement of the Court in *Hunter*, § 85-5-7 does not abolish joint and several liability for up to 50% of the plaintiff's injuries and replace it with several liability. *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264, 1274 (Miss. 1999). Rather, § 85-5-7, by its express language, abolishes joint and several liability over 50% of the judgment and leaves untouched joint and several liability up to 50% of the judgment.

### Application to the Instant Case

¶11. Narkeeta has conceded that, had Koehn not paid a dime, it would have been forced to pay 50% of the judgment according to the statute. For example, Narkeeta would have been severally liable up to 50% of the judgment. This is consistent with the language of the statute. However, the statute also states that liability for the 50% is not merely several, but joint and several. Here, Koehn has already paid $100,000. If the 50% liability is truly joint, meaning shared between tortfeasors, Koehn and Narkeeta share liability for up to 50% of the judgment. Applying this reasoning, if two parties owe something together, the fact that one party paid a portion of it necessarily decreases the amount owed by the other. If we were to force Narkeeta to pay 50% regardless of what Koehn paid, we would render meaningless the term "joint and several" and be left merely with several liability.

¶12. Narkeeta and McCallum have paid $925,533 of the judgment and Koehn has paid $100,000. This brings the total amount paid to $1,025,533. This is exactly 50% of the $2,051,066 judgment against the defendants. Implementing the statute here, these defendants are jointly and severally liable for up to 50% of the judgment. Therefore, Narkeeta and McCallum have satisfied the judgment against them because 50% of the total judgment has been paid to the plaintiffs. Therefore, they are released from any further obligation to the Mosleys and Jenkins pursuant to Miss. Code Ann. § 85-5-7.

### CONCLUSION

¶13. After reviewing the facts of this case and the applicable law, we find that the circuit court did err as a matter of law in dismissing Narkeeta's and McCallum's motion to cancel the judgments against them. For these reasons, we reverse the judgment denying Narkeeta's and McCallum's motion to authorize the circuit clerk to cancel the judgments against them, and we render judgment here that the judgments against McCallum and Narkeeta are satisfied and canceled.

¶14. **REVERSED AND RENDERED.**

**PITTMAN AND BANKS, P.JJ., MILLS AND COBB, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. PRATHER, C.J., AND WALLER J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶15. Believing that the majority's interpretation of the statute runs afoul of established judicial precedent, firm public policy and the Legislature's intent in enacting the statute, I respectfully dissent. The aim of tort law is to protect the rights and privileges of persons against wrongful acts by others and restore an injured party to as good a position as he held prior to the tort. 86 C.J.S. *Torts* § 2, at 625-26 (1997). Any judicial

or legislative decision concerning tort liability requires a balancing of competing interests and a policy decision as to which party should bear the risks of an immune or insolvent tortfeasor. *Id.* at 627

¶16. Narkeeta is essentially trying to use Koehn's payment as if it were a settlement in order to lower its proportionate share of responsibility for the joint judgment, asking this Court to make a policy decision that the victim bear the brunt of the largely insolvent Koehn. Through the majority's interpretation, the tortfeasors avoid suffering the consequences of their actions to the tune of $100,000; money owed to the innocent victims that they will never see. I do not believe that the Legislature intended the statute to allow one tortfeasor to use the payment of another as a windfall, thus depriving the injured party a more complete recovery. I believe that the majority's holding will result in an interpretation of the statute that functions in conflict with the basic precepts of tort law, and ultimately the public interest.

¶17. As noted in the majority's opinion, Mississippi follows the joint and several liability theory in determining loss apportionment between tortfeasors. The statute at issue, Miss. Code Ann. § 85-5-7 (1999), altered the rule of apportionment to allow two or more tortfeasors to stand trial and have a jury award entered against them without the fear of being responsible for the entire amount of the award. Miss. Code Ann. § 85-5-7(2). Additionally, the statute caps a tortfeasor's payment responsibility at fifty percent of the recoverable damages if the tortfeasor's proportionate fault is fifty percent or less. Miss. Code Ann. § 85-5-7(3). Under subsection (3), Narkeeta and McCallum are considered one defendant for purposes of liability. It is important to remember that the statute **does not limit** plaintiffs to fifty percent recovery. Instead, it limits the payment by each tortfeasor against whom a joint judgment is rendered to fifty percent of the total verdict. Furthermore:

> The principal effect of § 85-5-7 is that it abolishes joint and several liability for up to 50 % of the plaintiff's injuries and replaces it with a several liability up to this amount. Thus, the statute serves to reduce the extent to which one defendant may be held liable for the negligence of another.

*Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264 (¶35) (Miss. 1999).

¶18. Narkeeta urges this Court to interpret Miss. Code Ann. § 85-5-7 to hold that the collective joint and several liability of all defendants contributing to the loss is fifty percent instead of each party being held individually responsible for fifty percent of the judgment. Narkeeta supports this position by emphasizing that the statute does not clearly state that a plaintiff is entitled to fifty percent from each defendant.

¶19. A definitive understanding of the terms "several liability" and "joint and several liability" is necessary before delving further into the argument. "Several liability" is liability that is separate and distinct from liability of another to the extent that an independent action may be brought without joinder of others. "Joint and several liability," on the other hand, describes the liability that an individual or business either shares with other tortfeasors or bears individually without the others.

¶20. Although this is the first opportunity for this Court to interpret the language of our apportionment statute, the United States Court of Appeals for the Fifth Circuit, in a case not cited by either side in this appeal, ventured an "*Erie*-guess" as to how we would decide a similar issue. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). *Krieser* questioned whether a non-settling defendant was entitled to a pro-tanto credit for a settlement amount tendered by a joint tortfeasor. *Krieser,* 166 F.3d at 745. Although distinguishable from the case at bar, the reasoning behind the *Krieser* decision is sound and wholly applicable. The *Krieser*

court relied heavily upon language found in *McBride v. Chevron U.S.A.*, 673 So. 2d 372, 380 (Miss. 1996), which did not apply § 85-5-7 because the incident occurred before the statute's effective date, where this Court considered both the settlement-first and the fault-first methods of verdict reduction. ***Id.*** In trying to ascertain the fairest method of verdict reduction in cases where a jury returns a verdict against a tortfeasor after a codefendant joint tortfeasor settles, we held that "a defendant whose negligence proximately caused injury to another person should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial." ***Id.***

¶21. In this case, neither defendant settled, however, Koehn paid the limits of his insurance immediately after trial. This ideal -- that plaintiffs should not be denied recovery where one of the tortfeasors settles before the end of trial -- is instructive in articulating the public policy issue before us today. The public policy underlying this issue in Mississippi was best explained in ***Pruett v. City of Rosedale***, when this Court said:

> One of the paramount interests of the members of an organized and civilized society is that they be afforded protection against harm to their persons, properties, and characters. The logical extension of that interest is that, if harm is wrongfully inflicted upon an individual in such a society, he should have an opportunity to obtain a reasonable and adequate remedy against the wrongdoer, either to undo the harm inflicted or to provide compensation therefor. If the state is properly to serve the public interest, it must strive, through its laws, to achieve the goals of protecting the people and of providing them with adequate remedies for injuries wrongfully inflicted upon them. So long as the state fails to do so, it will be functioning in conflict with the public interest and the public good.

***Pruett v. City of Rosedale***, 421 So. 2d 1046, 1048-49 (Miss. 1982)(quoting ***Nieting v. Blondell,*** 235 N.W.2d 597, 602-03 (Minn. 1975)). Here, the jury found Narkeeta to be twenty percent liable. Therefore, Narkeeta's assertion that it is severally liable to the plaintiffs for twenty percent or $410,213.20 of the joint judgment is correct under subsection (3) which is the amount of damages allocated to it in direct proportion to its percentage of fault. However, recovery under the statute is not limited to subsection (3). Narkeeta is also liable to the plaintiffs for fifty percent of the recoverable damages or $1,025,533 under subsection (2). Again, we must remember that the statute does not cap a plaintiff's total recovery to fifty percent of the judgment. It simply caps the payment of each judgment debtor to fifty percent of the total verdict.

¶22. Narkeeta argues that § 85-5-7(4), which allows for contribution between tortfeasors who share a joint judgment burden, is an inadequate remedy for the less culpable defendant. The crux of Narkeeta's argument against relying on this section for less culpable tortfeasors to recover payments on joint judgments over and above their proportionate share of liability is that the more culpable codefendant is most likely insolvent (otherwise the plaintiff would have pursued a claim for recovery against this codefendant), and therefore, the less culpable codefendant who paid more than its proportionate share would have a worthless claim of contribution against the more culpable co-defendant. While this subsection may not always be helpful in obtaining contribution from codefendants, the Legislature enacted it to cure the historical problem of no contribution.

¶23. After reviewing the facts of this case and the applicable law, I believe that the circuit court did not err as a matter of law in denying Narkeeta's and McCallum's motion to cancel the judgments against them. Each defendant against whom a joint judgment is rendered is responsible for up to fifty percent of the

judgment despite its proportionate liability. If its proportionate share is less than fifty percent, such as the case here, then a defendant who has paid more than its proportionate share of the joint judgment may seek contribution against a tortfeasor with whom it shares a joint judgment. Better the tortfeasors fight one another for the disproportionate share in contribution rights than prevent the innocent victim from recovering as much of his judgment as is possible. For these reasons, I would affirm the judgment of the trial court.

**McRAE, J., JOINS THIS OPINION.**